Bacon, J.
 

 The order for a new trial, granted by the Supreme Court at general term in the fourth district, proceeds substantially upon two grounds: • 1. That the contract entered into by the defendants with the plaintiff, out of which the cause of action arises, is void either as being
 
 ultra
 
 vires, or as contravening public policy; and 2. That if valid, a breach was not shown inasmuch as it was not proved that a diversion of trade from the plaintiff, against which it was intended to furnish an indemnity, was caused by the positive acts of the company. I think the court erred in both these conclusions.
 

 If we concede that the business of buying and selling merchandise was not one of the purposes for which this company was organized, yet it will be rather difficult to predicate illegality of a transaction of this character, which for aught that appears was a single and isolated one. Their primary, and it may be added their legitimate, business was the manufacture of linen goods, and by the act under which they were organized they could purchase and hold and convey any real or personal estate necessary to enable them to carry on their transactions. The manufacturing of goods necessarily implied the power of disposing of them when manufactured, and if so, of receiving in payment money, or property readily convertible into money,
 
 *127
 
 or provisions or stores for the payment of their employees. How the goods which they sold to the plaintiff came into the hands of the company does not appear in the Case.' They might, for aught that is affirmatively proved, have been in part, if not altogether, their own manufactured goods; or they might have been received in payment upon sales of such goods, or fallen into their hands as the only equivalent the company could obtain for debts due to them. It may be very true that the power to purchase, hold and convey personal estate does not confer upon this company an unlimited discretion as to the nature and extent of such transactions. But I am unable to see why the company may not lawfully have acquired the property in question in either of the modes above indicated. If, however, they acquired the goods in any such way as to make the transaction doubtful, as a question of power, what are the corporations to do with property thus forced in or forced upon their hands ? Must they purge the illegality by giving the goods away, or destroying them, or may they not sell and transfer a good title to a purchaser ? . I think, beyond all doubt they may, and that the contract can be upheld and enforced on this ground.
 

 But again, if it be conceded that the defendants had no power to enter into the contract of sale in this case and bind the company to perform the obligations assumed, viewed as a mere question of corporate power, yet having undertaken to do so, and having' received the full consideration agreed to be paid by the plaintiff, and he having fulfilled his entire contract, they cannot now be permitted to set up that excess of authority to excuse them from that part of the contract which imposes an obligation upon them. It is very clear that if the plaintiff' in this suit had been prosecuted upon one of the notes given by him upon the purchase, he could not, having accepted and retaining the goods, have set up as a defence want of . power in the defendants to enter into the contract. The same rule of right and the same measure of justice will be exacted in this suit. This principle has been repeatedly held as applicable to an individual attempting to screen himself from liability
 
 *128
 
 when contracting with a corporation, and in the case of a corporation when seeking to escape responsibility on the plea of
 
 ultra vires
 
 for acts deliberately done with all usual and needful formalities; and where they have received the entire benefit they contracted for, such a defence should no longer be tolerated in our courts. In principle it is condemned by the decision in
 
 Tracy
 
 v.
 
 Talmadge
 
 (4 Kern., 162), although I admit this precise question is not presented in that case. Where the question is merely as to the capacity to contract, a party who has had the benefit of the contract should not be permitted, especially where there is no unlawful intent charged upon the other party, and he is in no sense
 
 in pari delicto,
 
 to question its validity. To deny relief to a plaintiff thus situated, would be substantially to secure to* the party deliberately violating one of the laws of its existence, and where no guilty complicity can be charged upon the other party, the fruits of an illegal trans-' action, and operate as a premium upon repudiation and fraud.
 

 The agreement in this case is in its true scope and object purely a contract for the sale of goods. It is very clear that in contemplation of the benefits the plaintiff expected- to derive from the trade of the employees of the defendants, he had engaged to pay a large price for the stock, and in case this expectation should be disappointed by the contingency expressed in the contract, the defendants engaged, in substance, to deduct the $300 from the purchase price. The agreement to pay back was only to provide for the event that the whole purchase money should be paid, or no part of the securities given should remain in the hands of the defendants when the time should arrive for the deduction to be made. Precisely this state of things did occur. A majority of the trustees, and those who had made the contract, went out of office within the ensuing year; the moneys paid by the plaintiff, and the notes he gave upon the purchase, were all used or negotiated by the defendants, and they retained no obligation on his behalf. The trade of the plaintiff, as alleged and proved on the trial, largely declined. It is conceded by the court below, in the opinion granting a new trial, that if the sale had been upon condition that the
 
 *129
 
 purchaser was not to pay the last $300, except upon the terms mentioned in the instrument of sale, and á breach had occurred within its provisions, the collection of the $300 could not be enforced. Or, to state the same proposition in another form, if the company had retained one of the plaintiff’s notes until it had become due, and had brought an action upon it, the defendant in such suit could unquestionably have set off the $300 thus provided for in the contract. If so, why should the law refuse him the same remedy arising out of the same facts, when he seeks it affirmatively—any other remedy being denied him by the act of the defendants in putting his obligations beyond the reach of a defence?
 

 Upon the other proposition, to wit: that the plaintiff could only recover by showing that the trade was diverted by the acts of the trustees of the corporation, I think the court also erred. Such is not the reading of the contract, nor is there anything in or out of it that would authorize us to say that such was the intent of the parties. It provided that if the then trustees should, within a year from the first of March following its date, cease to have the management of the affairs of the company, and in consequence thereof the general trade of the hands of the company should be diverted from the plaintiff’s store, and he should sustain damage thereby, then the $300 was to be paid to the plaintiff, or deducted from the amount he might be owing to the company. How, all the plaintiff had to show to entitle himself to recover, was (1) a change in the administration of the affairs of the company, as provided in the contract; (2) that by reason thereof his general trade was diverted, and (3) that he had sustained damages thereby. To these points his proof was directed. If was not necessary, in establishing the second link in this chain, to prove that the new trustees, by active personal effort, affected the change in the trade. It was enough, if the proof tended to show to the satisfaction of the jury that this result followed as a sequence upon the change of trustees and the fact that those then in power ceased to have the management within the period prescribed by the contract. And this view of the con
 
 *130
 
 tract answers the objections made to the statements of Fellows concerning the trade at plaintiff’s store. It was competent upon the question of fact as to the falling off in the plaintiff’s trade and the causes to which it was to be attributed, and was of the same class and character of much that was admitted upon the other side to raise the presumption that the diversion of the trade was owing to other causes and influences.
 

 ' This also is an answer to the suggestion in the defendants’ points (although no such ground is taken in the opinion of the court) that the contract is against public policy, inasmuch as it bound the company under a penalty to continue the then trustees in office. This seems to me a strained and violent construction to put upon a contract, the whole purport and scope of which was simply to provide that the plaintiff should have a reasonable indemnity upon the occurrence of a state of facts which might easily happen, and which occurring, might be calculated to, as it really did,’ have a prejudicial effect upon his interests, and diminish the value of his purchase. At all events, this clause in the agreement produced no such apprehended result, since the very trustees who executed it went out of office by their voluntary resignation within three, months after its execution.
 

 The contract was well executed .on the part of the trustees. . Their duty was to transact the business of the company; and, besides, the contract was treated as valid and binding by the corporation, and they received and applied to their own corporate uses the entire consideration obtained from the plaintiff upon the sale. The 8th by-law, referred to by the counsel, merely provides that contracts signed by the president and secretary, shall be of binding force, and excludes no other mode by which a contract may be manifested or recognized.
 

 If, then, the contract is one that the defendants could lawfully make, or one whose obligations, under the circumstances disclosed in this case, they are not permitted to repudiate, and the proper construction is the one we have placed upon it, and whi&b on the trial at the circuit was maintained, it follows that
 
 *131
 
 no error was committed which requires this cause to 'be sent back for a re-trial.
 

 The judgment of the general term should be reversed, and that at the circuit affirmed, with costs of the court below and of the appeal.
 

 Combtock, Oh. J., concurred fully in the preceding opinion; the other judges who concurred did so on the ground first stated in the opinion of Bacon, J., reserving the question whether, if the contract were
 
 ultra vires,
 
 the plaintiff could maintain an action upon it because the defendant had received and retained the consideration; Denio, J., dissented* and Weight, J., expressed no opinion.
 

 Judgment reversed, and judgment for plaintiff..