WILLIAM BROWN SMITH, Appellant, *v.* THE CITY OF SYRACUSE and THE SYRACUSE IMPROVEMENT COMPANY, Respondents, Impleaded with Others.

17    63
17ap 21
    17    63
    r161a484
17          63
37 Mis⁰201

*Syracuse — the same persons cannot within three months petition for different pavements in the same street — plans and specifications should be prepared and filed before bids are made — validity of a subsequent law giving a construction to a prior statute — when the designation of material of a particular maker does not stifle competition.*

Under the provision of the charter of the city of Syracuse, as it existed prior to the amendment of 1895, directing that a petitioner for a local improvement should not be counted or considered upon a remonstrance against the improvement petitioned for by him, nor be permitted to withdraw his name from such petition within three months after the petition was presented to the common council, the common council of that city had no jurisdiction to act upon a petition for the paving of a street therein with asphalt, which was signed by the identical persons who, twenty-six days prior thereto, presented a petition for the paving of the same street with brick.

The charter of that city as it then existed also provided that, where a proposed local improvement involved an expenditure exceeding seventy-five dollars, the work should be done by contract, to be let to the lowest bidder; that all work

should be done in accordance with plans, specifications and estimates prepared by the city engineer, unless otherwise specially ordered, and that the city clerk should advertise for proposals for a period of not less than five days.

*Held,* that it was the design of the charter to make work upon local improve-ments competitive, and that it was requisite to the making of intelligent bids by honest persons that they should have an opportunity to inspect the plans and specifications before they bid;

That a just interpretation of these provisions required that the plans and specifi-cations should be filed before the advertisement for proposals was begun; that consequently, where the plans and specifications were not filed until four days before the time advertised for the reception of proposals, the common council had no legal right to let the contract.

The amendment by chapter 950 of 1895 to the charter of that city, placing a legislative construction upon the provisions above considered, and designed to remedy defects in the prior letting of contracts by the city, arising from a failure to observe such provisions, by providing that such legislative construc-tion should apply to contracts let prior to the amendment, does not affect rights which arose before the act was passed, as the Legislature is without power to enact that pre-existing statutes shall be so construed as to affect exist-ing causes of action, or pending actions, in the particular manner which may be prescribed by the subsequent and declaratory act.

A petition and subsequent resolution of the common council of the city of Syra-cuse providing for the paving of a street therein "with vitrified paving brick manufactured by the New York Brick and Paving Company of Syracuse, N. Y.," is not obnoxious to the provision of the charter of that city requiring free competition, in the absence of any evidence that the brick in question was made under a patent, or was not generally for sale in the market, there being no requirement that the brick should be purchased of the company in ques-tion or of any particular dealer.

WARD, J., dissented.

APPEAL by the plaintiff, William Brown Smith, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Onondaga on the 31st day of December, 1895, upon the decision of the court separately stating the facts found and the conclusions of law, rendered after a trial at the Onondaga Special Term, dismissing his complaint, without costs.

*William S. Andrews,* for the appellant.

*Charles E. Ide,* for the City of Syracuse, respondent.

*William Nottingham,* for the Syracuse Improvement Company, respondent.

FOLLETT, J.:

This action was begun December 14, 1894, by a taxpayer to restrain the city and its officials from entering into a contract with the Syracuse Improvement Company for paving Liberty street, from Park avenue to West Genesee street, with asphalt. The city of Syracuse and the Syracuse Improvement Company answered separately, but the individual defendants have not answered.

The decision of this case depends on the construction which should be given to the following sections of title 9 of the charter of the city of Syracuse (Chap. 26, Laws of 1885, as amended by chap. 449, Laws of 1888, chap. 475, Laws of 1889, and chap. 531, Laws of 1893):

"§ 139. (As amended by c. 531, L. 1893.) Before any local improvement shall be undertaken, except for the construction, repair or reconstruction of sidewalks, it shall be necessary for the owners of at least one-third of the total number of front feet, lineal measurement, or at least one-third in number of the owners of the property on the street or part of a street in or upon which the proposed improvement is to be made, to petition, request or consent, in writing, for the making thereof. Upon the receipt of any such petition, request or consent for any local improvement, the common council, if it shall determine to make the improvement asked for, shall cause a printed or written notice of the proposed improvement to be served on the persons owning property fronting upon the street or part of a street in or upon which such improvement is proposed to be made; * * *

"§ 140. Such notices shall be served at least ten days before the improvement shall be ordered by the common council, and shall specify the time within which any person interested may object to such improvement, which time shall not expire sooner than the next regular meeting of the common council, and that in case no objection is made within the time specified, all persons interested will be deemed to have acquiesced in the proposed improvement. Such objection must be made in writing, delivered to the city clerk. If no objection be made, the common council may, at any regular meeting within two months after the expiration of such ten days, by a majority vote, subject to the mayor's veto, as in other cases, order the improvement to be made; but if any such objection be made

within the time specified, the improvement shall not be ordered except by the vote of two-thirds of all the members of said common council.

"§ 141. (As amended by c. 531, L. 1893.) Before the common council shall direct the service of the notices aforesaid, it shall be the duty of the assessors, or a majority thereof, to examine such petition or consent and certify that the number of owners required by section one hundred and thirty-nine have signed the same, which certificate shall be indorsed upon said petition and shall be final and conclusive evidence of that fact. *No person signing a petition, request or consent shall be counted or considered upon a remonstrance against the improvement petitioned for, requested or consented to by him ; nor be permitted to withdraw his name from such petition, or revoke such request or consent, within three months after the presentation of such petition, request or consent to the common council.*"

"§ 155. (As amended by c. 449, L. 1888.) Whenever the common council shall order any work done or materials or supplies to be furnished, under the provisions of the foregoing sections of this title, the same shall be done by contract if it shall involve an expenditure exceeding seventy-five dollars, and such contract shall be let to the lowest bidder. * * * When the lowest bid, in the opinion of the common council, is too high, they shall have the right to reject it, and may then by resolution discontinue or abandon the work, or they may direct the clerk to advertise for new proposals."

"§ 156. (As amended by c. 475, L. 1889.) All work done under the provision of the foregoing sections of this title shall be done under the direction of the commissioner of public works, and in accordance with the plans, specifications and estimates prepared by the city engineer, unless otherwise specially ordered."

"§ 157. Whenever directed by the common council, the clerk shall advertise for proposals for such length of time as the council shall direct, not less than five days. * * * The proposals shall be such in form as the council shall prescribe."

On the 15th of August, 1894, four property owners petitioned the common council " to order the paving of Liberty street from Park avenue to West Genesee street with vitrified paving brick, manufactured by the New York Brick & Paving Company of

Syracuse, N. Y., the maintenance of said pavement to be guaranteed for a period of five (5) years from its completion. The width of the roadway not to exceed twenty-five (25) feet between curbs."

September 10, 1894, the same persons petitioned the common council " to order the paving of Liberty street from West Genesee street to Park avenue with Trinidad asphalt sheet pavement, and the maintenance of said pavement for a period of five years from the time of its completion without further cost to the city or property owners."

The petition for paving Liberty street with vitrified paving brick was referred to the highway committee, by which it was reported favorably on the 4th of September, 1894, and, on September 10, 1894, the common council passed the following resolution :

" *Resolved,* That the report of the highway committee on the petition of John Zinsmeister and others for the paving of Liberty street from Park avenue to West Genesee street with vitrified paving brick, manufactured by the New York Brick & Paving Company of Syracuse, N. Y., the maintenance of said pavement to be guaranteed for a period of five years from its completion, be taken from the table, and that the same be and is hereby adopted, and the clerk is directed hereby to serve the proper notices."

September 12, 1894, a written notice was duly given to the property owners that the common council had determined to pave Liberty street with vitrified brick as specified in the petition and in the resolution. September 17, 1894, the common council adopted a resolution directing that the clerk advertise five days for proposals for furnishing materials to pave Liberty street with vitrified paving brick, manufactured by the New York Brick and Paving Company of Syracuse, N. Y. October 2, 1894, it was advertised that sealed proposals would be received until October 8, 1894, at three P. M., for paving Liberty street with vitrified paving brick. No proposals were received under this advertisement for the reason that the plans and specifications had not been prepared by the engineer. October twenty-third the clerk advertised that sealed proposals for paving Liberty street with vitrified paving brick would be received until October 29, 1894, at three P. M.

The petition of September 10, 1894, for paving Liberty street with Trinidad asphalt sheet pavement was referred to the highway

committee, which reported favorably September 17, 1894, and, on the 24th of September, 1894, the common council passed the following resolution:

"*Resolved*, That the report of the highway committee on the petition of Herman Bartels and others for the paving of Liberty street from West Genesee street to Park avenue with Trinidad asphalt sheet pavement, and the maintenance of said pavement for a period of five years from the time of its completion, without further cost to the city or property owners, be taken from the table, and that the same be and is hereby adopted, and the clerk is hereby directed to serve the proper notices."

On the 26th of September, 1894, written notice was duly given to the property owners that the common council had determined to pave Liberty street with Trinidad asphalt sheet pavement, as specified in the petition for paving with asphalt, and in the last-mentioned resolution. October first, the clerk was directed to advertise five days for proposals for furnishing materials to pave Liberty street with Trinidad asphalt sheet pavement, in pursuance of which it was advertised that proposals would be received for such pavement until October 8, 1894, at three P. M. The specifications not having been prepared by the city engineer, the clerk again advertised on October twenty-third that proposals for paving Liberty street with Trinidad asphalt sheet pavement would be received until October 29, 1894, at three P. M. The specifications for paving the street with either kind of material were not prepared and filed by the engineer until October 25, 1894. On the 29th of October, 1894, the following two proposals were received for paving Liberty street with Trinidad asphalt sheet pavement: "Warren-Scharf Asphalt Paving Company, $6,422.30; Syracuse Improvement Company, $5,851.80."

The following four proposals were received on the same day for paving the street with vitrified paving brick manufactured by the New York Brick and Paving Company, of Syracuse, N. Y.: "Andrew F. West, $5,170.00; Homar & Co., $5,194.80; G. D. Grannis, $5,167.70; L. D. Hulburt, $4,715.80."

On November 19, 1894, the following resolution was unanimously adopted by the common council, fifteen aldermen being present, which was signed by the mayor:

"WHEREAS, This Common Council hereby designates Trinidad

asphalt sheet pavement as the material with which to pave Liberty Street from West Genesee Street to Park Avenue; now, therefore,

"*Resolved,* That the Mayor and Clerk be and they are hereby authorized and directed to enter into contract with the Syracuse Improvement Company for furnishing materials and paving Liberty Street from West Genesee Street to Park Avenue with Trinidad asphalt sheet pavement, and the maintenance of said pavement for a period of five years from the time of its completion, without further cost to the city or property owners, in accordance with their proposal submitted to this Council, October 29th, 1894."

The bid of the Syracuse Improvement Company was the lowest for paving with Trinidad asphalt sheet pavement, but was higher than any one of the four bids for paving with vitrified paving brick. Immediately after the adoption of this resolution this action was begun, and no contract has been entered into in behalf of the city for paving the street.

It is not, and it cannot be successfully, denied that the two central ideas embraced in the sections quoted are (1) to give to owners of property, who are to be assessed for local improvements, a voice in determining whether they shall be made; (2) to secure publicity in respect to the particulars of the improvement ordered, and invite competitive proposals for the construction of the work, and thus secure it to be done for the best attainable price. The sections should be construed so as to accomplish these results, if it can be done, without violating the language of the statutes.

The four persons who petitioned August 15, 1894, that Liberty street be paved with vitrified brick, on the 10th of September, 1894 (no other persons joining with them), petitioned that the street should be paved with Trinidad asphalt.

These pavements are totally unlike, and the street could not be paved with both.

Section 141 provides that a petitioner shall not, within three months after petitioning, revoke his petition, withdraw his name, nor become a remonstrant. Under this provision, the four persons who petitioned August 15, 1894, for paving the street with vitrified brick could not, within twenty-six days, become petitioners for an entirely different kind of pavement in the same street. The second scheme, under which the work was let, was not initiated by

competent petitioners, and the action of the common council on the second petition was without jurisdiction and is void.

These sections were designed to secure free and fair competition among bidders for the construction of such improvements as shall be ordered in the city of Syracuse. It is true that section 157 permits the work to be let after advertising five days for proposals, which, perhaps, is a provision not likely to permit much competition among bidders who do not reside in the city. It is apparent that intelligent bids cannot be made by persons honestly intending to do the work fairly, without an opportunity of inspecting the plans and specifications and learning precisely what kind of work is required and its details. In no other way can the result be accomplished. A just interpretation of the section requires that the plans and specifications shall be filed before proposals for doing the work are advertised for, so as to give a reasonable opportunity to bidders to judge of the probable cost of the work. If the time of filing the plans and specifications is wholly discretionary, they may be filed an hour before the bids are to be opened, or, as in this case, four days before the time limited for the reception of bids. The requirements of the section in this respect were not complied with under either scheme, and the common council had no legal right to let the work so advertised.

By chapter 950 of the Laws of 1895 section 155 of the charter hereinbefore quoted was amended, among other things, by the addition of this provision: "The foregoing provisions of this section shall be construed to authorize and empower the common council to receive bids for doing a particular piece of work with different kinds of material and under different plans and specifications, and, in cases where the proposed improvement is the paving of a street, avenue, square, alley or public place, with different kinds of pavement; and, after the receipt of the bids, to designate the material, and, in cases of paving, the kind of pavement to be used, and the plans and specifications pursuant to which the work shall be done; and to authorize the letting of the contract to the lowest bidder for doing the work with the material, and under the plans and specifications, or, in cases of paving with the pavement so designated; and any improvement heretofore let under the provisions of this title, and in accordance with the foregoing construction of this section,

shall be deemed and hereby is declared to have been let legally and in compliance with the provisions of this section."

Section 156 was amended by chapter 950 of the Laws of 1895 by adding the following provision: "Where proposals shall be advertised for in accordance with plans and specifications of the city engineer, the preparation of such plans and specifications by said engineer a sufficient length of time before the letting to enable intending bidders to prepare and submit their bids in accordance with the terms of the advertisement shall be deemed and. construed to be a compliance with any and all requirements of this title relative to the time of the preparation by the engineer of such plans and specifications. And in cases of any contract heretofore let according to such plans and specifications, where the plans and specifications were so prepared, the same shall be deemed and hereby are declared to have been prepared a sufficient length of time before the letting to fulfill the requirements of this section."

It is urged that the legislative construction, by chapter 950 of the Laws of 1895, of sections 155 and 156, as they existed when this action arose, controls the rights of these litigants and is binding on the courts. The Constitution of this State vests all judicial powers in the courts and none in the Legislature, and the latter is without power under the Constitution to enact that pre-existing statutes shall be construed so as to affect causes of action then existing, or actions then pending, as prescribed by the subsequent and declaratory act. (*People* v. *Board of Supervisors of N. Y.*, 16 N. Y. 424; *Farmers' Bank* v. *Hale*, 59 id. 53, 62; *Ogden* v. *Blackledge*, 2 Cranch, 272; *Postmaster-General* v. *Early*, 12 Wheat. 136, 142; *Todd* v. *Clapp*, 118 Mass. 495; *Cunningham's Appeal*, 108 Penn. St. 546; Cooley Const. Lim. [3d ed.] 93, and cases cited.)

The amendments to sections 155 and 156 made by chapter 950 of the Laws of 1895 have no effect on this litigation.

It is insisted that the action of the common council in the proceeding to pave the street with brick was void, because the petition to, and the determination by, the common council provided that the paving should be done "with vitrified paving brick manufactured by the New York Brick & Paving Company of Syracuse, N. Y.," which prevented free competition; and that this proceeding being void, the only valid proceeding was to pave with asphalt, and

that the letting thereunder was to the lowest bidder. There is no evidence in the record showing that these bricks were made under a patent or that they were not generally for sale in the market. The petition and determination did not require that the brick should be purchased of the New York Brick and Paving Company or of any particular dealer, but the contractor was left free to purchase from any one having such brick for sale, and the proposed contract did not, under the evidence in this record, prevent or tend to prevent or to restrict fair competition.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concurred, except WARD, J., dissenting.

Judgment reversed and a new trial ordered, with costs to abide the event.