CHOCTAW, O. & G. R. CO. v. BOND.

(Circuit Court of Appeals, Eighth Circuit.   March 18, 1908.)

No. 2,556.

1. CONTRACTS—EQUITABLE INTERPRETATION—FORFEITURE.

A contract should not be construed as providing for an unreasonable and oppressive forfeiture, if its language fairly admits of a more equitable interpretation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 735.]

2. SAME—DIVISIBILITY—ILLEGAL CONSIDERATION.

When a contract consists of distinct agreements, each founded upon a distinct consideration, it is to be regarded as divisible; and, if one of the considerations be illegal, that alone does not invalidate the entire con-

tract, but only the agreement founded thereon, and the others may be enforced.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 701–712.]

3. CORPORATIONS—CONTRACTS—ULTRA VIRES—CORPORATION PRESUMED TO CONTRACT WITHIN ITS POWERS.

Corporations are presumed to contract within their powers; and when a corporate contract is not on its face beyond the powers of the corporation making it, it will, in the absence of evidence to the contrary, be presumed to be valid.

(Syllabus by the Court.)

In Error to the United States Court of Appeals in the Indian Territory.

For opinion in Court of Appeals, see 6 Ind. T. 515, 98 S. W. 335.

Charles B. Stuart, for plaintiff in error.
W. H. Moore and E. A. Boyd, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. On February 5, 1902, Bond and the railroad company entered into a written contract whereby the former sold and transferred to the latter certain property in the Choctaw Nation in the Indian Territory, consisting of a house in Hartshorne, another in Gowan, and the improvements upon certain designated lands; and wherein he released and relinquished to it his right "to the surface" of such lands to enable it to construct and maintain a reservoir thereon, and granted and conveyed to it, so far as he had "the legal right to do so," the right to construct dams and impound water thereon. As a part of the contract Bond agreed to procure an assignment to the railroad company of an existing lease made by one Thomas, a Choctaw citizen, to one Chastian, another Choctaw citizen, presumably covering a part of the lands before mentioned; and also to procure the execution by Thomas to Chastian of another lease, for reservoir purposes for a period of 30 years, covering all of such lands, and to obtain an assignment thereof from Chastian to the railroad company. The consideration to be paid to Bond for all of this was $3,865, and $3,500 thereof was the consideration for the houses in Hartshorne and Gowan, deeds for which were executed on the same day. There was this further stipulation on the part of Bond:

"And I covenant and agree to protect said railroad company in the possession of said land until after its said reservoir shall be completed, and to accomplish this end I agree that the sum of $3,500 for the property above referred to in the city of Hartshorne and at mine No. 3 (Gowan) may be retained by said company to be paid to me when it shall have completed said reservoir without any interruption by any one else, and without there being any adverse title to any of said land."

Bond fulfilled his other stipulations, and the railroad company entered upon the lands, pursuant to the contract, and completed the reservoir, without any interruption of its possession or work of construction; but there were some adverse claims to the possessory right

to the reservoir site, and the railroad company was put to an expense of $365.15 in acquiring them. The railroad company paid to Bond $365 on the contract shortly after it was made, and declined to make any further payment after the reservoir was completed. He then brought an action against it on the contract in one of the courts in the Indian Territory to recover the remaining $3,500, and, upon the trial thereof, the facts before stated, with others yet to be mentioned, being conclusively established by the evidence, the court directed a verdict in his favor for that amount, less the amount expended by the company in acquiring the adverse possessory claims, interest to be computed on both. The company excepted to that ruling, and, when judgment was entered upon the verdict so directed, it appealed to the Court of Appeals in the Indian Territory, where the judgment was affirmed. 98 S. W. 335. Thereafter it sued out the present writ of error.

To a proper understanding of the transactions to which the contract relates and of the terms which it uses, it is essential that it be borne in mind that the title. properly speaking, to the lands mentioned therein, as well as to all other lands in the Choctaw Nation, was in the Indian Nation or tribe; that there was no title in any individual, and none could be acquired by the railroad company; that the right of occupancy for the time being was all that was subject to acquisition by sale, transfer, or lease; and that it was this right, and not the title, in respect of which the parties were contracting.

The principal question presented for our consideration is, was Bond's right to receive the $3,500, the agreed consideration for the sale and transfer of the houses in Hartshorne and Gowan, made absolutely dependent upon the completion of the reservoir without interruption, and without there being any adverse title to any of the lands; or was the railroad company merely entitled to retain that sum as a security or pledge for the performance by Bond of his engagement relating to the possession and title of the reservoir site? The contract is not happily expressed in that regard, but its meaning is not doubtful. It relates to two distinct transactions, the transfer of the houses in Hartshorne and Gowan for a consideration of $3,500, and the procurement of a designated reservoir site for a consideration of $365. The houses were transferred before the contract was signed. This is shown by a recital therein that deeds for them "have been executed on this date," and is implied in the provision that the consideration therefor "may be retained" by the company pending the completion of the reservoir. Therefore, to say that Bond's right to receive the $3,500 was made absolutely dependent upon the completion of the reservoir without interruption, and without there being any adverse title to any part of the reservoir site, is to say, in effect, that his right to the stipulated consideration for having transferred the houses to the railroad company was to be absolutely forfeited to it, in the event that he made default in the performance of his engagement relating to the possession and title of the reservoir site; and this regardless of whether the loss resulting to the company was little or great. A stipulation to that effect would be so obviously un-

reasonable and oppressive that it cannot be implied or inferred. Manson v. Dayton, 82 C. C. A. 588, 597, 153 Fed. 258, 267. None such is plainly expressed. On the contrary, the language employed is reasonably satisfied by holding, as we do, that the consideration for the transfer of the houses was to be retained by the company pending the completion of the reservoir merely as a security or pledge for the performance by Bond of his engagement in respect of the possession and title of the reservoir site, and that in the event that he defaulted therein the railroad company was to be compensated for any loss thereby sustained out of the money so retained, but was not to be entitled to the whole thereof regardless of the extent of its loss. The contention to the contrary is rested entirely upon the concluding words of the stipulation before quoted, "to be paid to me when it shall have completed said reservoir without any interruption by any one else, and without there being any adverse title to any of said land." But these words cannot be properly wrested from their connection with those which immediately precede them, "and I covenant and agree to protect said railroad company in the possession of said land until after its said reservoir shall be completed, and to accomplish this end, I agree that the sum of $3,500 for the property above referred to * * * may be retained by said company." All must be read together, and, when that is done, it is reasonably plain that what was in the minds of the parties was the protection of the railroad company against any loss resulting from an interruption of its possession or work of construction, or from an adverse title, and not the penalizing of any default on the part of Bond. If, however, the meaning of the stipulation were doubtful, there are other considerations which would lead to the same result. The contract was not prepared by Bond, but by the then solicitor for the railroad company, and so is within the rule, that where there is doubt as to the true meaning of a written contract, and one of the parties is responsible for the terms employed, it is both just and reasonable that it should be construed most strongly against him. Christian, v. First National Bank, 84 C. C. A. 53, 155 Fed. 705. And another rule, equally applicable, is that when a contract in writing is fairly open to two constructions it is legitimate to adopt the one which equity would favor. Washington, etc., Co. v. Cœur d'Alene, etc., Co., 160 U. S. 77, 101, 16 Sup. Ct. 231, 40 L. Ed. 355; Christian v. First National Bank, supra. It follows that when the railroad company was given credit for the expense to which it was put in acquiring the adverse possessory claims, with interest thereon, it was accorded all that it was entitled to in that respect.

It is next contended that the stipulation relating to the procurement and assignment of the 30-year lease of the reservoir site was violative of a law of Congress relating to the Choctaw Nation (Act June 28, 1898, c. 517, 30 Stat. 507; Ind. T. Ann. St. 1899, § 57z26), and, therefore, that the entire contract was void. When the contract was made the Choctaw lands had not been allotted in severalty, the work of allotting them had not begun, and there was some uncertainty as to when it would begin and be accomplished. Because of that, it may be that

the statute relied upon was not controlling, and that such a lease would not have been void, but, under other provisions of the same law (30 Stat. 501, 504, §§ 16, 23; Ind. T. Ann. St. 1899, §§ 57z6, 57z13), would have been effective until the lands included therein should be allotted. But conceding, for present purposes only, that the stipulation relating to the 30-year lease was void, still that does not affect the railroad company's obligation to pay for the houses; for it does not admit of doubt that, when a contract consists of distinct agreements, each founded upon a distinct consideration, it is to be regarded as divisible; and, if one of the considerations be illegal, that alone does not invalidate the entire contract, but only the agreement founded thereon, and the others may be enforced. Gelpcke v. City of Dubuque, 1 Wall. 221, 17 L. Ed. 519; United States v. Hodson, 10 Wall 395, 408, 19 L. Ed. 937; Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, 70, 22 L. Ed. 315; Armstrong v. American Exchange National Bank, 133 U. S. 433, 469, 10 Sup. Ct. 450, 33 L. Ed. 747; McCullough v. Virginia, 172 U. S. 102, 115, 19 Sup. Ct. 134, 43 L. Ed. 382; Western Union Telegraph. Co. v. Burlington Co., 3 McCrary, 130, 11 Fed. 1; 9 Cyc. 569; 15 Am. & Eng. Enc. (2d Ed.) 990. As before said, the transfer of the houses and the procurement of the reservoir site were distinct transactions, and a distinct sum was to be paid for each. Bond parted with the houses, and the railroad company obtained them, on the strength of its agreement to pay $3,500 for them. True, it was to retain that sum, for the time being, as a security or pledge for the performance of his engagement relating to the possession and title of the reservoir site, but that did not render the two transactions interdependent, or make the company's obligations in respect of them indivisible.

Finally, it is urged that the contract was void, because, as is asserted, the railroad company's right of way and station grounds were obtained under an act of Congress (Act Feb. 18, 1888, c. 13, 25 Stat. 35; Ind. T. Ann. St. 1899, § 4742), upon the express condition that it should not be permitted to acquire any right, whether of occupancy or otherwise, to any lands of the Choctaw Nation outside of such right of way and station grounds. The property to which the contract relates, including the two houses and whatever possessory right went with them, was outside of those limits. We doubt that the condition was as broad as asserted, but, if so, it was very materially modified by a later act (Act Oct. 1, 1890, c. 1252, 26 Stat. 640; Ind. T. Ann. St. 1899, §§ 4760–4772), whereby the acquisition by the company of extensive coal leasehold interests in the Choctaw Nation was assented to by Congress, and by a still later act (Act Aug. 24, 1894, c. 330, 28 Stat. 502; Ind. T. Ann. St. 1899, § 4753), whereby the company was expressly authorized "generally to do all and singular the matters and things which shall be necessary or convenient to enable said company to maintain, use, and operate their railroads and mines * * * in conformity with the provisions of the acts of Congress." In view of this legislation, we entertain no doubt that the company was empowered to acquire the property to which the contract relates, if it became necessary or convenient to do so, in the course of the legitimate opera-

tion and management of its railroads and coal mines. Jacksonville, etc., Co. v. Hooper, 160 U. S. 514, 523, 16 Sup. Ct. 379, 40 L. Ed. 515. There is nothing on the face of the contract indicating that the property was acquired for a purpose not authorized, and there was no evidence to that effect. In that situation the contract was rightly regarded as valid, for, as is said in Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693 :

"When a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made, it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers."

We find no error in the record, and the judgment is accordingly affirmed.