## KANSAS CITY HYDRAULIC PRESS BRICK CO. v. NATIONAL SURETY CO.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1909.)

### No. 2,767

1. CONTRACTS (§ 136*)—ILLEGALITY—EFFECT ON OTHER CONTRACTS.

   The illegality of one contract does not extend to another, unless the two are united either in consideration or promise.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 136.*]

2. MUNICIPAL CORPORATIONS (§ 346*) — CONTRACTS FOR IMPROVEMENTS — ILLEGALITY—EFFECT ON BOND OF CONTRACTOR.

   The fact that a paving contract with a city was illegal because not let on competitive bids as required by statute does not render illegal a bond given by the contractor and running to the state to secure his payment for labor and materials, although such bond was also required by statute to be exacted from all contractors for public improvements; it not being necessary for one furnishing labor or material, in an action to recover therefor on the bond, to prove or rely on the contract with the city.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 346.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. SALES (§ 48*)—VALIDITY.**

A contract for the sale of brick to a paving contractor is not rendered illegal because the seller knew that the brick were to be used in paving streets and was chargeable as matter of law with knowledge that the contract under which the work was to be done was illegal because let in violation of law.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 101; Dec. Dig. § 48.*]

**4. SALES (§ 48*)—VALIDITY.**

A brick company procured the signing of petitions by property owners for the paving of certain streets and the letting of contracts for the paving by the city on such petitions. The petitions, advertisements for bids, and the contracts all specified a brand of brick made only by the company as the material to be used. The contractor bought the brick from the company, used it, and the paving was accepted and paid for by the city, but he failed to pay for the brick. Subsequently the Supreme Court of the state decided that contracts let on specifications designating material of a particular manufacturer, when other kinds were available for the work, were illegal and void as in violation of the policy of the statute, which required the bids to be competitive. There was no fraud in the transaction, the action of the company was open, and the illegality was apparently not known to the city officers, nor was any objection made by property owners. *Held*, in an action against the contractor and the surety on his bond given to secure payment for labor and materials, to recover the price of the brick, that the fact that the company was instrumental in procuring the illegal contracts from the city did not, under the circumstances, constitute a defense to the liability of defendants.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 101; Dec. Dig. § 48.*]

**5. LIMITATION OF ACTIONS (§ 130*) — ACTION ON CONTRACTOR'S BOND—KANSAS STATUTES.**

Gen. St. Kan. 1901, § 4451, which provides that "if any action be commenced within due time and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits and the time limited for the same shall have expired, the plaintiff * * * may commence a new action within one year after the reversal or failure," applies to an action on a bond given by a contractor for public work under sections 5130, 5131, to secure payment for labor or material furnished for such work, which is required by such statute to be commenced within six months after completion of the work.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 565; Dec. Dig. § 130.*]

**6. LIMITATION OF ACTIONS (§ 25*) — ACTION ON CONTRACTOR'S BOND — KANSAS STATUTE.**

Under Gen. St. Kan. 1901, §§ 5130, 5131, which provides that a bond shall be required from a contractor for public work conditioned that he shall pay all indebtedness for labor and materials used, which bond may be sued on by any person to whom such an indebtedness is due within six months after completion of the work, such right of action arises out of contract and is not given by the statute, and the limitation is not therefore a part of the right so as to exclude the application of the general provisions of the limitation statutes of the state.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 119; Dec. Dig. § 25.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 157 Fed. 620.

The defendant here and below, the National Surety Company, was the surety upon three bonds executed by W. W. Atkins, conditioned that he should promptly pay and discharge all labor and material bills incurred in paving

portions of two streets in Kansas City, Kan. The plaintiff furnished vitrified brick to Atkins, which were used in paving the streets. He made default in the payment of the purchase price, and this action is brought against his surety upon the bonds. Two defenses are interposed: First, that the contract is void for illegality; second, that the action is barred by the statute of limitations.

To understand the first of these defenses, a somewhat extended history of the transactions is necessary. In the month of August, 1901, the repaving of Fifth street from Reynolds avenue to Central avenue, and the paving of the same street from Central avenue to Euclid avenue, was under consideration. The Diamond Brick & Tile Company employed agents to circulate petitions among those owning property upon the street, asking the city council to take the proper steps to have the improvement made. Under the statutes of Kansas, this was the proceeding necessary to initiate such a public work. The petitions were prepared by the Diamond Brick & Tile Company, and specified that the paving should be made with "No. 1 Vitrified Paving Brick, Diamond Brand." This was a kind of brick made exclusively by that company, and the evidence shows that there were several other makes of vitrified brick that were equally fit for paving purposes. In the case of such improvements the statute of Kansas requires the petitions to contain a "specific description of the material to be used." On August 6, 1901, these petitions, at the instance of the Diamond Brick & Tile Company, were presented to the mayor and city council, and a resolution in conformity therewith, also prepared by that company, declaring the necessity for paving the street, was passed. Thereafter detailed specifications for the doing of the work were drafted by the city engineer, and in the early part of September bids were solicited by public advertisement based upon such specifications. The Brick & Tile Company requested Atkins to become a bidder. Eight bids were submitted for each improvement. Those of Atkins being the lowest, he was awarded the contracts. On the 17th day of September, 1901, formal contracts were executed between him and the proper city authorities. On the same date the defendant herein joined him in the execution of bonds conditioned as above stated. The giving of such bonds was required by a statute of Kansas before Atkins could begin work upon the streets. In the contracts, as well as in all the proceedings before the city council, the Diamond brick, manufactured exclusively by the Diamond Brick & Tile Company, were specified as the material to be used in constructing the paving.

In the month of July, 1902, similar proceedings were had for the paving of Split Log avenue, and on September 16, 1902, the contract was awarded to Atkins for the doing of that work, and a bond executed by the defendant as surety. The connection of the Diamond Brick & Tile Company with that improvement was the same in every particular as with the paving of Fifth street.

After the contracts were awarded to Atkins for the paving of Fifth street, and the bonds executed on his behalf by the defendant as surety, in September, 1901, the entire proceeding relative to that street seems to have been suspended for about a year. The next transaction consists of a written contract between Atkins and the Diamond Brick & Tile Company, bearing date October 30, 1902, whereby Atkins agrees to buy, and the corporation agrees to sell and deliver to him, brick for the paving of Fifth street between Central avenue and Euclid avenue. A similar contract was entered into between the same parties under date of December 1, 1902, for brick for the paving of Split Log avenue. Both of these contracts were on December 13, 1902, assigned in writing by the Diamond Brick & Tile Company to the plaintiff herein, and the latter agreed to carry out such contracts. On January 16, 1903, a written contract was entered into directly between Atkins and the plaintiff for brick for the paving of Fifth street from Reynolds avenue to Central avenue. It appears from the evidence that the plaintiff purchased the plant of the Diamond Brick & Tile Company where the Diamond brick were manufactured, but the date of the transaction is not given in the evidence. Mr. Atkins stated that it occurred some time during the spring of 1903. But the fact that two of the contracts between Atkins and the Diamond Brick & Tile Company for brick were assigned to the plaintiff on December 13th, and that the contract for the

brick for the other job was entered into on January 16, 1903, by Atkins, directly with the plaintiff, tends to show that between these dates the plaintiff acquired the plant of the Diamond Brick & Tile Company, or had definite negotiations looking to that result.

The paving was completed by Atkins under the supervision of the city engineer in June, 1903. The work was then examined and approved by the proper authorities, and Atkins was paid the full consideration provided in his contracts. The plaintiff furnished the brick, as required by the contracts with Atkins above set forth. He has failed to pay for the same, and this action is brought against the surety company as his bondsman. At the close of plaintiff's evidence a verdict was directed in favor of the defendant. It was held not only that the contracts between Atkins and the city were illegal, but that their illegality also destroyed the contracts upon which the brick were furnished by the plaintiff and the bonds given by the defendant.

James S. Botsford (Buckner F. Deatherage, Odus G. Young, John E. McFadden, and Robert E. Morris, on the brief), for plaintiff in error.

Frank Hagerman (A. L. Berger, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge (after stating the facts as above). The trial court based its ruling in the main upon section 747 of the General Statutes of Kansas of 1901, which requires that, when the estimated cost of a contemplated improvement amounts to $100—

"sealed proposals for the doing or making thereof shall be invited by advertisement published by the city clerk in the official paper of the city for at least three consecutive days, and the mayor and council shall let the work by contract to the lowest responsible bidder."

The Supreme Court of Kansas, in the Case of National Surety Co. v. Kansas City Hydraulic Press Brick Company, 73 Kan. 196, 84 Pac. 1034, construed this statute, and held that, when the nature of the material to be used in a public improvement admitted of competitive bidding, such bidding was indispensable, and that the specification of a particular make of brick for paving, when the evidence showed that there were several makes equally well adapted for the purpose, was a violation of this statute, and rendered the proceedings and the contract based thereon illegal and void. This decision of the highest court of the state construing its statute, and defining the powers and duties of municipal bodies, is binding upon us; but the effect of a violation of its provisions upon collateral and independent contracts is a matter of general law, as to which it is the duty of the federal courts to exercise an independent judgment. Giving effect to the statute as thus interpreted, the contracts between Atkins and the city for these several jobs of paving were illegal and void. No action could be based thereon, either for their enforcement or to recover damages for their violation. Any party affected thereby could maintain a suit to restrain the municipal authorities from entering into such contracts, and could successfully resist the collection of assessments based thereon. These contracts, however, are not directly before the court in the present suit. They have been fully executed. The city has paid the agreed price for the paving, and the property owners are paying with-

out objection their assessments to create a fund to discharge the bonds issued to raise money to pay Atkins.

Three grounds have been advanced in argument in support of the charge that the bonds sued upon are illegal: First, it is urged that they are a part of the illegal contracts between Atkins and the city. The statute provides:

"That whenever any public officer shall, under the laws of the state, enter into contract with any person for the purpose of making any public improvements, * * * such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor shall pay all indebtedness incurred for labor or material furnished in making said public improvement."

The defendant contends that under this statute the contracts between Atkins and the city were incomplete until the bonds in suit were executed, and hence that the latter are tainted with the illegality of the former. While the statute requires public officers to exact such bonds, their failure to do so would not render either the original contract for making the improvement, or collateral contracts for labor and material used therein, illegal or void. Though the bonds and the contracts bear the same date, they are not part of one entire contract. They are between different parties, rest upon distinct considerations, and require the doing of independent acts. The illegality of one contract does not extend to another unless the two are united either in consideration or promise. Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482. Such a union does not exist between the contracts in question. The bonds were not given to secure the performance of the contracts between Atkins and the city, but to secure independent contracts of materialmen and laborers. Even when a single contract embraces several agreements, some legal and others illegal, it is the duty of the court to separate the good from the bad, when that is possible. Choctaw, O. & G. R. Co. v. Bond, 160 Fed. 403, 87 C. C. A. 355; Lingle v. Snyder, 160 Fed. 627, 87 C. C. A. 529. This rule would be more readily applied when the agreements are contained in separate instruments. The plaintiff could have established its case without any aid from the illegal contracts. It is true that it pleaded those contracts in its complaint, and introduced them as part of its case upon the trial. This, however, was not necessary. The proof of the bonds, and the nonpayment of the purchase price of the brick used in constructing the improvements referred to in the bonds, would have made out a complete case in plaintiff's favor. It is what is necessary to be shown, rather than what is in fact shown, that indicates whether the union between two contracts is such as to involve one in the illegality of the other. A suggestion is also made in argument that Atkins was a mere figurehead, and that the real contractor with the city was the Diamond Brick & Tile Company. The evidence fails to support this charge. The only connection shown by the evidence between the corporation and Atkins was its request of him to submit bids for the doing of the work. There is no evidence whatever that the Diamond Brick & Tile Company supported him in the performance of his contract, or that he was in any way its agent. The purchase price of the brick was about three-eighths of the contract

price for the improvement, and there is no evidence that the brick company had anything to do with the other important features of the paving, or was concerned in supplying the brick, except to sell them at a stipulated price. We can find between the bonds sued upon, and the contracts between Atkins and the city, no such connection as would justify extending the illegality of the latter to the former.

Second, it is urged that because the plaintiff knew of the illegality of the contracts between Atkins and the city, and that the brick it supplied were to be used in the performance of those contracts, it became by reason of its knowledge a party to such illegality, so as to defeat its right to recover the purchase price of the brick. To so hold would be to extend unwisely the effect upon a contract of sale of the vendor's knowledge of the use to which property is to be devoted. It is now the holding of American courts that the knowledge of a vendor that property is purchased to be sold or used in violation of law does not defeat his right to recover its price, except in the case of heinous crimes. Wald's Pollock on Contracts (3d Ed.) 485. But here the use to which the bricks were to be devoted was not illegal. The utmost that can be contended is that they were to be used in the performance of illegal contracts. Even as to that, however, it should be noticed that the contracts were not illegal as to their object, but solely because they were entered into without competitive bidding. The paving of the street was, of course, a perfectly lawful enterprise. To hold that a sale of personal property is illegal because the vendor knows that the property is to be used in the performance of a contract, lawful in its object, but illegal because let in violation of law, would affix to a vendor's knowledge vitiating results beyond anything required by judicial authority or sound public policy.

It follows that, if the bonds sued upon are illegal, the vice must spring not from their connection with the contracts between Atkins and the city, but from the contracts between the plaintiff and Atkins for the purchase and sale of the brick. If the latter contracts are infected with illegality, the bonds cannot be resorted to as a means of collecting their consideration. It is elementary that all securities for the performance of illegal contracts are tainted with their vice. This brings us to the third ground upon which the defense of illegality is rested. It is urged that the Diamond Brick & Tile Company, by its conduct leading up to the award of the contracts to Atkins, became an aider and abettor of their illegality; that it was the prime mover in limiting the petitions and the specifications to its particular brand of brick; that its purpose was to induce the making of contracts in such a form that the successful bidder would be compelled to purchase the brick for making the improvement of that company; and that to allow the plaintiff to recover in the present suit would be to give judicial aid to a willful wrongdoer in gathering the fruits of his wrongdoing. This is the only defense that has apparent merit. It can have no application to the contract which was made directly between the plaintiff and Atkins for the brick used in paving Fifth street from Reynolds avenue to Central avenue. There is no evidence in the record tending to show that the plaintiff had anything to do with that transaction until more than a year after the contract was let to Atkins and the bond

given by the defendant. As to this contract, it was simply a vendor of material. It was in no way concerned either with the petition or the transactions with the city. The utmost that can be said against it is that it may have known that the Diamond brick had been illegally specified as the only brick to be used in the improvement, but it had in no way aided in causing such specification. As we have already indicated, that knowledge alone would not defeat its right of recovery. So, as to this contract, the direction of a verdict in favor of the defendant for illegality was clearly erroneous.

As to the other two contracts, the plaintiff is the assignee of the Diamond Brick & Tile Company, and stands in its shoes. If the defense of illegality would be available against that company, it must prevail against the plaintiff. Did the conduct of the Diamond Brick & Tile Company involve such moral turpitude as to deprive it of any standing in a court of justice? There is no evidence nor any charge that the company or its agents in their dealings with the property owners or the city authorities were guilty either of misrepresentation or corruption. Their conduct, so far as this record discloses, was open and aboveboard. The property owners and the city authorities must have known that the company was seeking to have its brick used in making the improvements. Their specification appeared conspicuously upon the face of all the writings and public advertisements, and the conclusion is irresistible that all parties concerned were fully cognizant of the facts. These documents were under the direct examination of the city engineer and the city attorney. Most of them were drafted by those officers. The resolutions, contracts, and ordinances, all designating No. 1 Diamond brick, were passed upon and approved by the city council and the mayor. The attention of competitive manufacturers of brick was drawn to the subject by public advertisement. There was ample time for discovery and objection. More than one year was consumed between the circulation of the petitions and the commencement of work upon the improvements. No officer of the city, no owner of property, no competitive manufacturer of brick, made any objection to the specification or challenged its legality. When those who have a direct property interest, and those who are charged with the official duty of observing the law, and whose judgment is not deceived by fraud or perverted by corruption, approve and join in the specification of the special make of brick, can it be said that the Diamond Brick & Tile Company ought to have known that such specification was wrongful and illegal? The Supreme Court of Kansas, in the case of Barber Asphalt Paving Company v. Botsford, 56 Kan. 532, 44 Pac. 3, had decided that it was legitimate for a materialman, desiring the use of his article in improving a street, to circulate petitions among property owners specifying such material, and to hire agents to urge upon such property owners and the city authorities the advantage of its exclusive use. It was the holding of a majority of American courts that, notwithstanding statutes requiring competitive bids for public work, it was still permissible to specify patented articles which, from the nature of the case, excluded competition. 1 Abbott, Municipal Corporations, 695. There had been no decision of any court of Kansas holding that, where the material admitted

of competitive bidding among different manufacturers, it rendered proceedings for the making of a public improvement void if the article of a single manufacturer was designated.   Nor had there been any decision declaring the effect of the statute requiring petitions of property owners to contain "a specific description of the material to be used."   It should further be noted that the specification complained of violated no express language of the statute.   It was not in terms prohibited.   Its illegality is not derived from the words of the act, but from the general policy which underlies it.   In the light of all these circumstances, the plaintiff's conduct may well be attributed to the honest zeal of a vendor rather than to a willful purpose to promote an illegal transaction by aid and counsel.   The law on the subject at the time the contracts were made was such that laymen might very well have entertained the belief that it was legitimate to secure the specification of a particular manufacture for the making of such improvements.   The line that separates patented articles from those not patented, so far as the policy of the law requiring competitive bidding is concerned, is not one of conspicuous clearness, or such as would be likely to impress the mind of the ordinary business man.   We do not think it can properly be said that the conduct of the brick company was willfully illegal; and it is only willful wrongdoing that ought to defeat the right of a vendor to recover the purchase price of an article sold upon a collateral and independent transaction.   The whole subject involves simply the question of what will best promote a sound public policy.   Even in dealings with municipal authorities, some room must be left for the zeal of vendors who are free from fraud or corruption.   We think the public policy which underlies the statute in question is given its full measure of effect when the original contract is held to be void.   The law requiring competitive bidding is for the protection of property owners.   To allow them, or the city on their behalf, to set up at any time the illegality of the transaction, will enforce the policy which the Legislature had in view in passing the law. Such was the redress afforded in the cases which have been urged upon our notice.   Smith v. City of Syracuse, 17 App. Div. 63, 44 N. Y. Supp. 852, and Swift v. City of St. Louis, 180 Mo. 80, 79 S. W. 172, were suits brought by property owners to restrain the awarding of contracts based upon specifications which prevented fair competitive bidding.   In Shoenberg v. Field, 95 Mo. App. 241, 68 S. W. 915, and Curtice v. Schmidt, 202 Mo. 703, 101 S. W. 61, the same facts were interposed by a taxpayer as a defense to an action to enforce payment of special assessments.   So far as we are aware, National Surety Co. v. Kansas City Hydraulic Press Brick Co., 73 Kan. 196, 84 Pac. 1034, is the only instance in which the illegality has been extended to collateral contracts.

The important case of McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, is forcibly urged upon our attention by learned counsel for defendant as a controlling authority upon the question now under consideration.   In that case plaintiff and defendant entered into an agreement to submit secret bids for a public improvement, and further agreed that, if they were successful in obtaining the contract, it should be carried out for their mutual profit or loss.

The action was brought to secure an accounting upon this contract. As the court says, the vice of such a combination "lies in the fact of secrecy, concealment, and deception." It further characterizes the conduct of the parties as follows:

"But in this case there is more even than concealment. There is the active fraud in the putting in of these, in substance, fictitious bids, in their different names, but in truth forming no competitive bids, and put in for the purpose already stated. * * * The making of fictitious bids under the circumstances detailed herein is in its essence an illegal and most improper act; indeed, it is a plain fraud, perpetrated in the effort to obtain the desired result." Page 652 of 174 U. S., page 844 of 19 Sup. Ct. (43 L. Ed. 1117).

In the present case, as we have already pointed out, there is no showing of concealment or misrepresentation. In McMullen v. Hoffman, again, the suit was brought upon the original contract. If the Diamond Brick & Tile Company had been a successful bidder for the paving of the streets, and the present suit had been brought against the city to enforce a contract entered into pursuant to such bid, the two cases would have been more nearly parallel. Even then they would have been distinguished by the fact that in the present case no fraud or deception was practiced upon the municipal authorities, a feature which was the very basis of decision in McMullen v. Hoffman.

Neither the surety company nor Mr. Atkins ought to be permitted to vicariously assert the rights of property owners for the purpose of defeating the recovery of the purchase price of the brick which Mr. Atkins received and used in paving the streets, and for which he has been paid in full. The Supreme Court of the United States, in passing upon a similar defense in Field v. Barber Asphalt Co., 194 U. S. 618–624, 24 Sup. Ct. 784, 48 L. Ed. 1142, used the following language:

"It is alleged that the tax bills should be held void because they were obtained by undue influence of the agents of the paving company improperly exercised to obtain the needed municipal action. The court below held, and an examination of the testimony has brought us to the same conclusion, that there was nothing in the case to establish the charges of fraud and corruption, although the record itself shows that an agent of the defendant company was active and perhaps influential in obtaining signatures to the petition which specified Trinidad Lake Asphalt for this improvement; yet, in the absence of fraud or corruption, we do not think the contract and resulting levies can be set aside for this reason. It is one thing to disapprove of such measures as a matter of propriety of action, but quite another to set aside the contract, especially after the full performance of its terms."

It is of capital importance in passing upon the present defense to estimate justly the degree of misconduct of which the Diamond Brick & Tile Company was guilty, because whether the taint of illegal conduct shall be extended to collateral transactions depends to a large extent upon the gravity of its moral turpitude. Mr. Justice Holmes, when speaking as Chief Justice of the Supreme Court of Massachusetts, in Graves v. Johnson, 179 Mass. 53, 60 N. E. 383, 88 Am. St. Rep. 355, emphasizes this distinction:

"It may be," he says, "that, as in the case of attempts, the line of proximity will vary somewhat according to the gravity of the evil apprehended."

To sell intoxicating liquor, with the knowledge that the purchaser intends to resell it in violation of statute, does not defeat an action

for the purchase price. But if an article is sold with knowledge that the purchaser intends to use it for the commission of a felony, a different rule should be applied. Wald's Pollock on Contract (3d Ed.) 485. Judging the conduct of the Diamond Brick & Tile Company in the light of the circumstances as they existed at the time of the transactions, we cannot attach to it such moral turpitude as would justify a denial of plaintiff's right to recover the purchase price of the brick furnished for these improvements, for which the city has paid in full, and to which no objection has been made by the parties directly concerned.

The statute of Kansas requiring contractors for public improvements to execute and file a bond to secure the payment of claims of mechanics and materialmen contains a provision "that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings." The plaintiff brought an action within the six months' limitation in the courts of Kansas, and recovered a judgment in the trial court which was reversed on appeal, and a new trial granted. National Surety Company v. Kansas City Hydraulic Press Brick Company, 73 Kan. 196, 84 Pac. 1034. Upon the remittitur coming down the plaintiff dismissed its action without prejudice on September 24, 1906, and commenced the present action September 26th of the same year. Section 4451, Gen. St. Kan. 1901, reads as follows:

"If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or if he die and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure."

The present action was commenced within less than one year after the dismissal of the former action, but more than six months after the completion of the improvement. So, unless it is protected by the statute last quoted, it is barred by the six months' limitation fixed by the original statute. In support of its defense, based on the statute of limitations, defendant first urges that the right of action is given by statute, and the limitation is, therefore, a part of the right, so that plaintiff had no cause of action after the expiration of the six months' period; citing Rodman v. Mo. Pac. R. R. Co., 65 Kan. 645, 70 Pac. 642, 59 L. R. A. 704, and The Harrisburgh, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358. In our judgment, plaintiff's cause of action is not given by statute. The rule invoked is applied to rights unknown to the common law, and created solely by statute, such as the right of recovery for death by wrongful act (The Harrisburgh, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; Boston & Maine R. R. Co. v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193; Theroux v. N. P. R. R. Co., 64 Fed. 84, 12 C. C. A. 52); the right to recover damages against cities and counties for injuries caused by mobs (Hill v. Board of Supervisors, 119 N. Y. 344, 23 N. E. 921). In the present case, while the statute required the contractor to furnish a bond, the right of action is not created by the statute. It imposed no liability upon the defendant. On the contrary, defendant's liability arises solely out of contracts into which it voluntarily entered for a valuable

consideration. In the case of statutes creating stockholders' liability, the cause of action rests much more closely upon the statute than in the present case, and yet it is held that the limitation in such statutes is not a part of the right. The liability, "though statutory in its origin, is contractual in its nature." Ramsden v. Knowles, 151 Fed. 721, 724, 81 C. C. A. 105, 108, 10 L. R. A. (N. S.) 897. The limitation·in the present case, therefore, is no part of the right, but relates exclusively to the remedy.

Section 4451, above quoted, giving an additional year in which to commence a new action, is a part of article 3 of the Code of Civil Procedure of Kansas, being section 23 of that Code as originally enacted. Section 4443 (being section 15 of the Code of Civil Procedure) is a part of the same article, and reads as follows:

"Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but where in special cases a different limitation is prescribed by statute, the action shall be governed by such limitation."

By virtue of this section it is contended that section 4451, giving the additional year in which to begin a new action, is confined to the numerous actions provided for in article 3, and that, when a period of limitation is prescribed by an independent statute like the one here involved, the limitation is absolute, and not subject to enlargement by section 4451. We cannot adopt that construction of these statutes. Article 3 of the Kansas Code of Civil Procedure was taken almost literally from the original New York Code of Procedure of 1848. It contains a general scheme of limitations for all the ordinary civil actions. In New York, however, it was intended to fit into an immense body of statutory laws, the accumulation of half a century, among which were many specific limitations for particular actions. The same situation was true in a less degree in Kansas when the Code of Civil Procedure was adopted there. Section 4443 was designed to meet this condition. It simply ordains that, when a particular period is fixed by an independent statute for the bringing of a specific action, that period shall control rather than the period specified in the general scheme contained in article 3. It deals exclusively with the period of limitation. At the end of that article, however, are found seven sections which do not deal with the period of limitation, but with general subjects applicable to all limitations of actions. In the New York Code they are set off in a separate chapter headed "General Provisions as to Time of Commencing Actions." They involve such matters as concealment of the defendant or his absence from the state, disabilities, judicial restraints, reversal of judgments on appeal or dismissal otherwise than on the merits, part payment or other acknowledgments of liability, and when actions shall be deemed to be commenced. Most of these provisions have been a part of the law of the limitation of actions from the very inception of that law. As the New York Court of Appeals says, when discussing the same question under their Code that we are now considering:

"It is difficult to conceive how any special limitation applicable to any class of actions can be administered without producing great injustice, unless the courts are at liberty to apply to such cases, when necessary, at least some of

the general provisions mentioned, and which are necessary to a just application of all such statutes." Hayden v. Pierce, 144 N. Y. 512, 518, 39 N. E. 638, 640.

These provisions show by the generality of their language that they were intended to apply to the limitation of all classes of actions, unless the statute creating such limitations expressly declares a contrary intent. "If any action be commenced," "In any case founded on contract," "If a person entitled to bring an action * * * be under any legal disability, every such person," such is the form of expression used in these general provisions. They clearly indicate an intention that they shall be applied to all statutes of limitation, unless such statutes themselves indicate a contrary intent. It is true that in a few exceptional cases the time for the commencement of actions may for special reasons be made absolute so as to exclude these general provisions. But to bring a statute within this class, the purpose of the Legislature must be clearly expressed. Such an intent will not be inferred from the simple prescribing of a period for the commencement of an action.

The question whether the general provisions at the close of article 3 apply to limitations created by special statutes, notwithstanding section 4443, has been frequently raised in New York, and it has been uniformly held in that state that they do so apply. Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638, was an action against an administrator. The claim had been presented and disallowed. A special statute of the state ordained that actions must be brought upon claims disallowed within six months after their rejection. The administrator was a nonresident of the state, and the action was brought more than six months after disallowance of the claim. This chapter of the Code of Procedure of New York, the same as that of Kansas, provides that the period during which the defendant is absent from the state shall be deducted from the periods of limitation. It was contended that the general provision did not apply to limitations created by special statutes, but was governed by a section the same in substance as section 4443 of the Kansas Code. Speaking to that point, the court says:

"Do these words refer to all the provisions of the chapter, or do they refer only to those periods of time within which the various classes of actions specified therein are to be commenced? We think they refer to the latter, and not to the former; and, if this be so, it follows that there are certain provisions found in the chapter which apply, not only to the general limitations therein prescribed, but to all other limitations to be found in other statutes, and, consequently, to those 'specially prescribed by law.'"

In Hamilton v. Royal Insurance Co., 156 N. Y. 327, 50 N. E. 863, 42 L. R. A. 485, involving the same question, the court says of these statutes:

"That section (referring to the language embraced in 4443 of the Kansas Code) does not exempt limitations which are specially prescribed by law, or by the written contract of the parties, from the operation of any of the provisions of chapter 4, except so far as they establish different periods of limitation."

As to the fact that, when the original statute of limitations is six months, the saving statute granting a year after dismissal in which to

bring a new action grants a longer period by the saving statute than was originally allowed, the same court says in Titus v. Poole, 145 N. Y. 414, 425, 40 N. E. 228, 231.:

"There is an apparent incongruity in the particular case, that the Legislature should give to a plaintiff a year after the termination of the former suit to bring an action against an executor or administrator, when the original action must have been brought within six months after the rejection of the claim. But the Legislature was declaring a general rule applicable to all cases, and made no distinction, as it might perhaps have done, if its attention had been drawn to the special case of an action to enforce a claim against the estate of a decedent which had been presented and rejected." ·See, also, Conolly v. Hyams, 176 N. Y. 403, 68 N. E. 662.

In some respects the decisions of the Supreme Court of Kansas on this subject are difficult to harmonize. Myers v. Coonradt, 28 Kan. 151, involved a special statute of the state fixing a limitation of five years for the bringing of an action to set aside a tax deed. Such an action was brought within the period, but dismissed for causes which did not involve the merits. The court, speaking by Judge Brewer, held that a new action commenced after the expiration of the five years, but within one year after the dismissal, is saved by section 4451. It will be noticed that the controversy, here presented came squarely within the provisions of section 4443. The statute was special, and prescribed a specific period of limitation. But the court in effect held that section 4443 did not refer to the general provisions at the close of article 3, but was confined to the periods of limitation covered by the earlier sections. The same rule is reasserted in an action to set aside a tax deed in Douglass v. Lovell, 55 Kan. 574, 40 Pac. 917. These decisions are not in harmony with Beebe v. Doster, 36 Kan. 666, 14 Pac. 150, and Cartwright v. Korman, 45 Kan. 515, 26 Pac. 48, where it is declared that section 141 of the tax law, prescribing a limitation of five years within which to bring an action to set aside a tax deed, is not modified, controlled, or limited to any extent by the provisions of the Code of Civil Procedure (Gen. St. 1901, § 7680), but is complete in itself except so far as it is modified by other provisions of the tax law. As we have just pointed out, the decisions first cited expressly held that the limitation prescribed by the tax law was controlled and modified by the section of the Code of Civil Procedure which allowed one year within which to bring a new action. The decisions last cited, however, are in no way inconsistent with the claim of the plaintiff in the present suit. Section 141 of the chapter on taxation is not properly a statute of limitations. By other sections of the statute the holder of a tax deed is deemed to be in possession of the property from the time the deed is recorded. The five-year limitation prescribed by section 141, therefore, is a period of prescription at the expiration of which a tax title becomes absolute, regardless of any actual defects therein. Such a limitation is identical in its results with the period of adverse possession required in ordinary cases of prescription. Such statutes are not statutes of repose affecting the remedy only, but are statutes of prescription fixing a period by the running of which an imperfect right ripens into an absolute title. Campbell v. Holt, 115 U. S. 620, 625, 6 Sup. Ct. 209, 29 L. Ed. 483; Langdell's Equity Pleading, § 118 et seq.; Northern Pacific Railway Co. v. Ely, 197 U.

S. 1, 8, 25 Sup. Ct. 302, 49 L. Ed. 639; Toltec Ranch Co. v. Cook, 191 U. S. 532, 538, 24 Sup. Ct. 166, 48 L. Ed. 291. It is further true that the tax statute referred to shows clearly an intent of the Legislature that the limitation which it fixes should be absolute. It provides that an action to recover the land or to set aside the tax deed shall be brought within five years from the time the deed is recorded, "and not thereafter." It allows expressly for two exceptions, viz., where the taxes have been paid, or the land redeemed as provided by law. The same statute fixes a period of limitation within which land sold for taxes may be redeemed, and as to the right of redemption makes an exception in favor of minors and insane persons during the period of their disability. The court held in Cartwright v. Korman, above cited, that, taking all these features of the statute together, there was a clear expression of the legislative intent that no exceptions should be allowed except those expressly provided for. It is manifest that the statute here involved contains none of the features which were controlling in that case.

Medill v. Snyder, 71 Kan. 590, 81 Pac. 216, which is cited by counsel for defendant, also rests upon peculiar grounds. That was an action brought to set aside a decree admitting a will to probate. A statute making the probate of a will conclusive after a fixed period is not a statute of limitations, but a rule of property, and the disability of the parties interested will not operate to postpone or prevent the running of the time prescribed. Luther v. Luther, 122 Ill. 558, 38 N. E. 166; Evansville Ice Co. v. Winsor, 148 Ind. 682, 48 N. E. 592; Bartlett v. Manor, 146 Ind. 621, 45 N. E. 1060; Cochran v. Young. 104 Pa. 333; Meyer v. Henderson, 88 Md. 585, 41 Atl. 1073, 42 Atl. 241. It is likewise true, as the court points out, that the statute there involved showed plainly by its language that it was the purpose of the Legislature that the fixed period should be absolute, and not subject to such conditions as the disability of the plaintiff. This purpose was manifested not only by emphatic language, but by the fact that specific provision was made for the disability of minors; and thus the intention was clearly indicated that other disabilities should not be allowed.

In Seaton v. Hixon, 35 Kan. 669, 12 Pac. 22, and Hobbs v. Spencer, 49 Kan. 769, 31 Pac. 702, new actions for the foreclosure of mechanics' liens were permitted, under section 4451, after the running of the statute of limitation prescribed by the mechanic's lien law. The court in the first case, in support of its opinion, refers to the fact that the mechanic's lien law is a part of the Code of Civil Procedure, and provides that, in actions to foreclose such liens, "the practice, pleadings and proceedings shall be in conformity with the rules prescribed by the Code of Civil Procedure so far as the same are applicable." We cannot attach any significance, on the question of the statute of limitations, to this reference in the mechanic's lien law to the Code of Civil Procedure. "Practice, pleadings and proceedings" appropriately refer to the steps in the prosecution of a civil action, and not to the limitation of such actions. It is likewise true that any civil action in a state having a Code of Civil Procedure would be governed as to such matters by the Code. This reference in the mechanic's lien law seems to be simply a rather clumsy method of expressing the idea that such

liens may be foreclosed by an ordinary civil action. In all recent compilations of the Code of Civil Procedure of Kansas, the statute requiring contractors for public improvements to execute and file a bond for the payment of laborers and materialmen, is appropriately placed in the chapter on mechanics' lien. Gen. St. 1901, §§ 5130, 5131. Those bonds simply take the place of the property that under ordinary circumstances would be chargeable with the liens of such claimants. The reason which would exempt actions for the foreclosure of mechanics' liens from section 4443 would·likewise exempt suits upon bonds given by public contractors.

The trial court committed no error in deciding the issue upon the statute of limitations in favor of the plaintiff.

. The judgment below is reversed, and the cause is remanded with directions to grant a new trial.