## RAMSAY v. CREVLIN.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1918.)

No. 5059.

1. APPEAL AND ERROR ⬅866(3)—REVIEW—SCOPE—DIRECTED VERDICT.

Where, at close of trial, each party requested an instructed verdict, each party was estopped from reviewing issues of fact on which there was any substantial conflict in the evidence, and, where there was substantial evidence to sustain a finding in favor of plaintiff, for whom the court directed verdict, the only question reviewable on writ of error is: Was there error in the declaration or application of the law by the court below?

2. COURTS ⬅366(7)—PRECEDENCE—STATE LAWS.

Whether Code Supp. Iowa 1913, §§ 1641b, 1641f, prohibit a corporation from selling or issuing its stock for the notes of solvent makers payable at reasonable times thereafter, is a question of state law, primarily for the decision of the Iowa courts, whose decision will be followed by the federal court.

3. CORPORATIONS ⬅92—ISSUANCE OF STOCK—NOTES.

Conceding that Code Supp. Iowa 1913, §§ 1641b, 1641f, forbid a corporation from selling or issuing its stock for the notes of solvent makers,

---

an agreement by a purchaser of stock, who had given a note therefor, to reimburse the directors of the corporation if they would pay for the stock already issued, is not in violation of the statute.

4. CORPORATIONS ⟨☞⟩103—STOCK—ISSUANCE—VALIDITY—"VOID."

While Code Supp. Iowa, §§ 1641b, 1641f, provide that a corporation shall not issue its stock until it has received the par value thereof, and that stock issued in violation of such provision shall be void, stock issued for a note is not wholly void, but is only voidable, and the issuance may be ratified, where the corporation receives the par value thereof; the word "void," as used by the lawmakers, being equivalent to voidable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Void.]

5. CORPORATIONS ⟨☞⟩92—SUBSCRIPTION—NOTE—VALIDITY.

A purchaser of corporate stock, who gave his note therefor, cannot defeat collection of the note on the ground of want of consideration, in that the Iowa statute requires corporations to receive the par value thereof before issuing stock, where the stock was actually issued and transferred by the purchaser for valuable consideration, particularly as the issuance of the stock might be ratified by payment.

6. CONTRACTS ⟨☞⟩171(1)—LEGALITY OF CONSIDERATION—AGREEMENT TO REIMBURSE—PAYMENT OF VOIDABLE NOTE.

Though, under the laws of Iowa, a note given for the price of corporate stock duly issued to the maker was void, *held* that, the maker having transferred the stock to another, an agreement on his part to reimburse directors of the corporation if they would pay the amount of the note and take it up, is not illegal or against public policy, being separable from the original purchase and note.

7. APPEAL AND ERROR ⟨☞⟩750(2)—REVIEW—DIRECTED VERDICT—ASSIGNMENT OF ERROR.

Though judgment for plaintiff was on verdict directed for him on the first cause of action, the question of the validity of the second cause of action is before the appellate court by reason of defendant's assignment of error to refusal of his general motion for directed verdict.

8. APPEAL AND ERROR ⟨☞⟩854(2)—REVIEW—REASON FOR DECISION—DIRECTION OF VERDICT.

Though, on motion for directed verdict by each party, verdict was directed for plaintiff on first cause of action, when it should have been directed for him on second cause for same amount, judgment will be affirmed; the validity of second cause being before the court, under rule of wrong reason for right judgment.

In Error to the District Court of the United States for the District of Colorado; Robert. E. Lewis, Judge.

Action by Byron Crevlin against Charles H. Ramsay. Judgment for plaintiff, and defendant brings error. Affirmed.

John T. Jacobs, of Greeley, Colo. (Herbert E. Mann, of Greeley, Colo., and H. R. Kaus, of Denver, Colo., on the brief), for plaintiff in error.

Pierpont Fuller, of Denver, Colo. (Henry T. Rogers, Daniel B. Ellis, Lewis B. Johnson, and George A. H. Fraser, all of Denver, Colo., on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. [1] The judgment here challenged rests upon an instructed verdict for Crevlin, the plaintiff below, and

each question presented is raised by the attack upon that instruction, and upon the refusal of the court to give to the jury an instruction, requested by Ramsay, the defendant, to return a verdict in his favor. As at the close of the trial each party requested the court to instruct the jury to return a verdict in his favor, each party was thereby estopped from reviewing every issue of fact upon which there was any substantial conflict in the evidence, and, as the record satisfies that there was substantial evidence at the trial to sustain a finding in favor of the plaintiff upon every material issue of fact in the case, the only question reviewable here is: Was there error in the declaration or application of the law by the court below? Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; United States v. Bishop, 125 Fed. 181, 183, 60 C. C. A. 123, 125; Phenix Ins. Co. v. Kerr, 129 Fed. 723, 724, 64 C. C. A. 251, 66 L. R. A. 569.

This was the case. The Barnes Electric Light & Power Company was a corporation of the state of Iowa, with a capital stock of 400 shares, of a par value of $100 each, 360½ of which had been issued, and 39½ of which remained in its treasury. About July 2, 1912, the defendant Ramsay agreed to take, and six months thereafter to pay, $3,500, with interest at 6 per cent. per annum, for 35 shares of this treasury stock, and thereupon he delivered to the corporation his promissory note, dated July 22, 1912, whereby he promised to pay this sum to the corporation, and the latter at some time before August 8, 1912, issued to him its certificate for the 35 shares of stock, which, prior to the latter date, he sold and assigned to H. J. Stoop in exchange for stock in some other corporation. On August 8, 1912, there was a meeting of the stockholders of the corporation for the election of officers and the transaction of other business at which some of the stockholders objected to the voting by Mr. Stoop of the 35 shares of stock, on the ground that they had been issued in violation of sections 1641b and 1641f of the Supplement Code of Iowa of 1913, which provide in substance that such a corporation shall not issue its stock "until the corporation has received the par value thereof"; that if it is proposed to pay for such stock "in property, or in any other thing than money," the corporation shall cause such property or other thing than money to be appraised by the Executive Council of the state of Iowa, and shall not issue its capital stock therefor in a greater amount than the appraised value of such property or thing; that stock issued in violation of the foregoing provisions shall be void; that in a suit brought by the Attorney General a decree of cancellation thereof shall be rendered; that, "if the corporation has received any money or thing of value for said stock, such money or thing of value shall be returned" (section 1641d); and that any officer, agent, or representative of a corporation who violates any of the foregoing provisions shall be subject to fine and imprisonment.

After a discussion of this objection the stockholders signed an agreement that, if those who were directors of the corporation when the note was taken would pay to the corporation $3,500, they would turn over to the payors Ramsay's note for $3,500 without recourse, would waive any objections to the issuance of the 35 shares of stock, and would agree that those shares should be considered legal stock of the

company. Farr, one of the former directors, talked with Ramsay over the telephone, told him of the objection to the voting of the stock, and asked him if he would pay the former directors the $3,-500 and interest when his note came due, if they would pay the $3,-500 to the corporation then for him, and he promised Farr that he would do so. Farr testified to this contract, and Ramsay testified that he had no such conversation. Upon Farr's report of this promise, four of the former directors, Crevlin, Farr, Swigart, and Bowen, paid to the corporation $3,500. The latter indorsed Ramsay's note to them without recourse, Stoop voted the 35 shares of stock, and there is no evidence that any one but Ramsay and his counsel has ever challenged the validity of this stock since. The interests of Bowen, Swigart, and Farr in their claim against Ramsay were conveyed to Crevlin, and he brought this action against Ramsay. He stated his cause of action in two counts—one on the note, and the other on the agreement of Ramsay, made on August 8, 1912, to pay to the four former directors the $3,500 and interest when the note came due, in consideration of their then paying the $3,500 to the corporation.

At the close of the trial each party made a general motion, without more, that the court instruct the jury to return a verdict in his favor; the court granted the plaintiff's motion, denied the defendant's, instructed the jury to return a verdict for the plaintiff on the first cause of action, and a verdict and judgment accordingly were rendered. This judgment is assailed here on three grounds: (1) That the taking of the note for the stock and the issue of the latter therefor were violations of the statute cited, and were against the public policy of the state, so that the note was not collectable; (2) that the note was without consideration; and (3) that the payment of the $3,500 to the corporation by the four directors, and the agreement of Ramsay to pay that amount and interest to them, were inseparable from the first transaction, grew out of it, and were tainted with its illegality, and for that reason the agreement of August 8, 1912, was not enforceable.

[2] Whether or not the statute of Iowa which has been cited prohibits a corporation from selling or issuing its stock for the promissory notes of solvent makers, payable at reasonable times thereafter, is a question of state law, primarily for the decision of the Supreme Court of Iowa. Upon that question this court will gladly follow its lead. That court discussed the question in First National Bank v. Fulton, 156 Iowa, 734, 137 N. W. 1019, but counsel disagree as to the effect of the opinion in that case and, as it is not indispensable to the disposition of this case to decide that issue, it is here dismissed without intimation of any opinion concerning it.

[3] Conceding that the taking of the note and the issuance of the stock therefor before the note was paid constituted a violation of the statute was illegal, and contrary to the public policy disclosed by that statute, it does not follow that the payment of the corporation for that stock by the four directors, or the payment for Ramsay's note by the four directors at the request of Ramsay, whereby the corporation received payment in money for the full par value of that stock, or that the agreement of Ramsay to pay to them the $3,500 they paid,

whether that payment was made for the stock or for the note, was either immoral or illegal, or against the public policy of the state. The sole object of the statute and of the public policy it embodied was to secure to each corporation payment for its stock to the amount of its par value in money or its equivalent. It could not have been either illegal or immoral for the four former directors to effect this desired object by paying the $3,500 to the corporation in money in consideration of Ramsay's agreement to repay them that amount, with interest; nor could it have been either illegal or immoral for Ramsay, who should have paid the $3,500 in money before he took the certificate of stock to agree to pay back to them the $3,500 he induced them to pay to the corporation in consideration of that agreement. Neither the payment nor the agreement to repay, either induced, aided, or effected any violation of the statute. On the other hand, they prevented the evil effect which the statute was enacted to avoid.

[4] Again, while the statute declares that stock issued in violation of it shall be void, it does not follow that such stock is void in such a sense that there remains no locus pœnitentiæ, that such stock may not be validated by the subsequent payment and receipt of the money for it. The word "void" is often used by legislators, courts, lawyers, and laymen when its true meaning is "voidable." "It is rarely," says the Supreme Court in Weeks v. Bridgman, 159 U. S. 541, 547, 16 Sup. Ct. 72, 74 (40 L. Ed. 253), "that things are wholly void and without force and effect as to all persons and for all purposes, and incapable of being made otherwise. Things are voidable which are valid and effectual until they are avoided by some act; while things are often said to be void which are without validity until confirmed. 8 Bac. Abr. Void and Voidable; Ewell v. Daggs, 108 U. S. 143 [2 Sup. Ct. 408, 27 L. Ed. 682]; Ex parte Lange, 18 Wall. 163 [21 L. Ed. 872]; State v. Richmond, 6 Foster (N. H.) 232; Anderson v. Roberts, 18 Johns. [N. Y.] 515 [9 Am. Dec. 235]; Pearsoll v. Chapin, 44 Penn. St. 9." A conveyance in fraud of creditors was declared to be "utterly void, frustrate, and of non-effect" by the statute of 13 Eliz. c. 5, and has been uniformly declared to be void by the statutes of the states, but such a conveyance is universally held to be voidable only, to be valid until avoided and to be capable of ratification by the creditors. Anderson v. Roberts, 18 Johns. (N. Y.) 516, 527; Harvey v. Varney, 98 Mass. 118; Drinkwater v. Drinkwater, 4 Mass. 354; Oriental Bank v. Haskins, 3 Metc. (Mass.) 332, 37 Am. Dec. 140; Crowninshield v. Kittridge, 7 Metc. (Mass.) 520. A gift of goods declared by statute to be void as to creditors is voidable only, and is susceptible of ratification. Snow v. Lang, 2 Allen (Mass.) 18. A preference of a creditor within 60 days of insolvency, declared to be void as to creditors by statute, is voidable only, and is capable of ratification. Colt v. Sears Commercial Company, 20 R. I. 64, 37 Atl. 314.

Turning to the decisions of the state of Iowa, whose statute is here under consideration, in Pennypacker v. Capital Insurance Co., 80 Iowa, 56, 45 N. W. 408, 8 L. R. A. 236, 20 Am. St. Rep. 395, the

254 F.—52

laws of the state of Pennsylvania forbade insurance on railroad property in that state by any company without a license from Pennsylvania and made the writing of such insurance punishable by fine. An insurance company of Iowa wrote such insurance without a license, it was sued upon the policy and defended on the ground that the policy was violative of the statute and of the public policy of Pennsylvania and was void, but the Iowa court sustained the action and said:

"The evident purpose of such a law is the protection of those paying for insurance upon property in that state. The prohibition and penalty is against the company only. No duty is required of the insured, and no act upon his part expressly prohibited."

Let the fact be noted here that the prohibition and the penalties of the Iowa statute in the case at bar are against the corporation and its officers, agents, and representatives only, and that no act of the subscriber or purchaser of the stock is expressly prohibited, nor is any penalty denounced against him. In Pangborn v. Westlake, 36 Iowa, 546, a statute of Iowa forbade the sale of a lot in any town or addition until the plat thereof was acknowledged and recorded, under a penalty of $50 for each lot so sold; but the Supreme Court of that state held that such a sale was not void.

Section 1753 of the Statutes of Wisconsin of 1898, provided that no corporation should issue any of its stock, except in consideration of money or labor, or property estimated at its true money value actually received by it equal to the par value thereof, nor any bonds, except for money, labor, or property estimated at its true money value actually received by it equal to 75 per cent. of the par value thereof, and that all stock and bonds issued in violation of this prohibition should be void. Corporations of Wisconsin issued their stock and bonds before they actually received the amounts of money, labor, or property required by this statute, but after the issue of these bonds and stocks the requisite amounts were paid therefor to the corporation. The Supreme Court of Wisconsin held (a) that the bonds and stocks were not void to such an extent that they could not be validated by the payment and receipt of the requisite amount of money, labor, or property before the commencement of the actions which challenged them; (b) that such payment and receipt made them valid; and (c) that one who accepts and holds or sells stock prematurely issued under such a statute cannot escape liability to pay therefor on the ground that the stock was issued before full value was actually received by the corporation for it because he cannot take advantage of his own wrong. Haynes v. Kenosha St. Ry. Co., 139 Wis. 227, 119 N. W. 568, 121 N. W. 124; Whitewater Tile Pressed Brick Mfg. Co. v. Baker, 142 Wis. 420, 125 N. W. 984–986.

The instances which have been cited illustrate the fact that the Legislatures often use the word "void" in statutes in the sense of utterly void, so as to be incapable of ratification, and also in the sense of voidable, yet capable of ratification by those whose rights are infringed, without clear distinction, and leave the courts to determine, from the terms of the statute, the nature of the subject-matter, the

purpose of the legislation, the benefit sought, the evil to be remedied, and the effect of one meaning or the other, whether it was the intention of the Legislature to use the word "void" in one sense or the other. Westerlund v. Blackbear Mining Co., 203 Fed. 599, 121 C. C. A. 627. The terms of the statute in hand indicate that the legislators used and intended to use the word "void" therein in the sense of voidable, for they provided that the stock issued in violation of the statute might be canceled by means of a suit by the Attorney General, and that in the case of such cancellation the note or other thing received for the stock should be returned to the purchaser, thereby rescinding the transaction, a useless proceeding, if they declared and intended to declare that the stock was utterly void and incapable of ratification.

The purpose of the legislators in enacting the statute was to secure to the corporation payment for its stock in money or its equivalent to an amount equal to the par value of the stock. That object will be attained more successfully and certainly if the stock issued in violation of the statute is held to be voidable than if it is adjudged to be absolutely void. If it is held to be voidable, the corporation may avoid it, if its full value is not paid when demanded, and, on the other hand, may secure that value if the purchaser is willing to pay it. If it is held to be utterly void, it can recover nothing for the stock it has sold, and must return that which it has received. Take the case in hand: The proof is that, when Ramsay gave his note for the stock, none of the parties were aware of the requirements of the statute that the stock should not be issued until the consideration for it had been fully paid in money or its equivalent. If the stock was incapable of ratification, and the note was uncollectable the corporation could not lawfully receive payment for the stock after its issue. If the stock was voidable only, the corporation could, as it did, lawfully obtain an amount of money equal to the par value of the stock it issued therefor, and the conclusion is that the true construction of that statute is that the word "void" was used and intended to be used therein in the sense of voidable, hence capable of ratification, and that by the acceptance of the $3,500 from the four former directors in payment therefor and for the assignment of Ramsay's note, the stock was ratified and validated, and the action on the note rendered indefensible.

[5] Another argument of counsel for the defendant is that the note was without consideration and uncollectable, because the stock was void and worthless; but the agreement to issue the stock, which was made before the note was delivered, and which induced its delivery, was a valuable consideration for the note, the stock subsequently issued, which was, as has been held, capable of ratification, was also a valuble consideration for the note, the defendant took and sold the stock for stock of another corporation, and he cannot now take advantage of his own wrong, and defend the action on his note on the ground that he received no consideration therefor.

[6] Finally, even if the stock had been void and the note had been originally uncollectable, the agreement of Ramsay of August 8, 1912,

to pay to the four directors the $3,500 and interest when the note should mature, in consideration that they then paid to the corporation the $3,500 which he ought to have paid before or at the time of the issue of the stock, was neither illegal, immoral, against public policy, nor unenforceable. The contention that this agreement of August 8, 1912, is illegal and unenforceable rests on the theory that it is inseparably connected with, and is in reality a part of, the illegal transaction of taking the note and issuing the stock, and that an action cannot be maintained on a contract that is illegal or against public policy; but the contract of August 8, 1912, was not inseparable from the contract of July, 1912, for the purchase of the stock. Judge Amidon, in delivering the opinion of this court in Kansas City Hydraulic Pressed Brick Co. v. National Surety Co., 167 Fed. 496, 93 C. C. A. 132, well said:

"The illegality of one contract does not extend to another, unless the two are united either in consideration or promise. Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482. * * * Even when a single contract embraces several agreements, some legal and others illegal, it is the duty of the court to separate the good from the bad, when that is possible. Choctaw, O. & G. R. Co. v. Bond, 160 Fed. 403, 87 C. C. A. 355; Lingle v. Snyder, 160 Fed. 627, 87 C. C. A. 529. This rule would be more readily applied when the agreements are contained in separate instruments. The plaintiff could have established its case without any aid from the illegal contracts. It is true that it pleaded those contracts in its complaint, and introduced them as part of its case upon the trial. This, however, was not necessary. * * * It is what is necessary to be shown, rather than what is in fact shown, that indicates whether the union between two contracts is such as to involve one in the illegality of the other."

The application of these indisputable rules to the contract of August 8, 1912, leaves no doubt of its independence of the contract and the transaction of July 22, 1912. In the first place, if there was any illegality or violation of public policy in the latter transaction, it was in the premature delivery of the stock before it was paid for in money, and that delivery had been made and Ramsay had sold the stock to another before the contract of August 8, 1912, was made. If there was any wrong, it had been done, and the contract of August 8, 1912, could not and did not induce, or in any way promote, the violation of the statute, or of the public policy it embodied. In the second place, it was neither a part of the contract, of the consideration, or of the promise of the contract of August 8, 1912, that the stock should be issued prematurely, and the two contracts were separate in consideration and in promise. One of the best tests of the inseparability of two contracts or transactions is the necessity of the proof of one by the plaintiff in order to maintain his action upon the other. There was no such necessity in the case at bar. All that was necessary for Crevlin to prove was his ownership of the note, Ramsay's promise to pay the amount of it when due, in consideration that the four directors would pay the $3,500 to the corporation in August, 1912, and their payment of that amount. No rational or logical way of escape is perceived from the conclusion that the contract of August 8, 1912, was separate from and independent of the contract and transaction

of July 22, 1912, and of any vice there may have been therein, and was lawful and enforceable.

[7, 8] If the objection to the affirmance of the judgment be suggested that the court below granted the motion for an instructed verdict for the plaintiff on the first, and not on the second, cause of action, the answer is, first, that the validity of the second cause of action was assailed by the defendant in its assignment of errors on the ground that the court erred, in that it failed to instruct the jury to return a verdict in his favor, and that attack invoked a consideration by this court of the validity of the second cause of action; and, second, that a judgment sustained by the law and the evidence is not reversible because the court gave a right judgment for a wrong reason.

Let the judgment below be affirmed.

STONE, Circuit Judge. Reserving expression of opinion respecting the interpretation which should be given the Iowa statute involved, I prefer to base my concurrence upon the validity of the agreement of August 8, 1912.