### GRAND VALLEY WATER USERS' ASS'N v. ZUMBRUNN.

(Circuit Court of Appeals, Eighth Circuit.    April 14, 1921.)

No. 5578.

1. **Appeal and error ⊕173(6)—That corporate contract was ultra vires cannot be first raised on appeal.**

   Where the claim that the contract, in furtherance of which the defendant corporation gave the notes in suit, was beyond the powers of the corporations, was not raised in the answer, or presented or ruled upon by the trial court, though the answer expressly alleged that such contract was made, error cannot be predicated on the failure of the trial court to sustain a defense to the note because the contract was beyond the powers of the corporation.

2. **Corporations ⊕465—Lender's knowledge that money was to be used for unauthorized purpose does not defeat recovery on note.**

   Where a corporation had the general power to borrow money and to promise to pay indebtedness, it cannot defeat recovery on a note executed by it by the plea that the money borrowed on the note was used by it in furtherance of an ultra vires contract, even though the lender of the money knew that it was to be so used, since the lender owed no duty to defendant to supervise the disposition of the money loaned to it.

3. **Contracts ⊕102—Recovery not defeated by intention to do unlawful act, not part of consideration or of performance of agreement.**

   One who has received the benefits of a complete performance of a contract, which was neither malum in se nor malum prohibitum, cannot successfully defend an action for the payment of his indebtedness accrued thereon, on the ground that either he or another intended to do some unlawful act, which was no part of the consideration nor of the performance of the agreement.

---

4. **Appeal and error** ☞1056(5)—**Exclusion of evidence insufficient to sustain defense on trial to court, not prejudicial to defendant.**

On a trial to the court, the exclusion of evidence offered on behalf of defendant, which, if admitted, would not have been sufficient, when taken with the evidence received, to have warranted a finding of the court for defendant, was not prejudicial to defendant.

5. **Estoppel** ☞114—**Need not be specially pleaded, when based on note on which recovery is sought.**

Plaintiff can rely on estoppel of defendant to assert that the execution and delivery of the note in suit was beyond its corporate powers, without specially pleading such estoppel, where the estoppel relied on was based on the note, which the plaintiff pleaded and proved, and on other evidence, which the defendant introduced.

6. **Corporations** ☞450—**Notes exceeding debt limit not a delictum, so that corporation could defeat recovery thereon on plea that payee was in pari delicto with it.**

The execution by a corporation of notes which made its outstanding indebtedness exceed the amount authorized by its charter does not involve any delictum or moral turpitude, so that the corporation cannot defeat recovery on such notes on the plea that the payee was in pari delicto with it.

7. **Corporations** ☞450—**Notes exceeding debt limit not invalid, in absence of statute.**

The fact that notes given by a corporation for money loaned to it made its indebtedness exceed the amount authorized by its charter does not render the notes invalid, in the absence of a statute imposing such penalty.

8. **Corporations** ☞450—**Notes in excess of debt limit are voidable, and binding after consideration was paid.**

A contract by a corporation to borrow money in excess of the debt limit authorized by its charter is voidable, and not void; and where it has been fully performed, by the lending of money to the corporation and the execution of notes therefor, the corporation cannot refuse payment of the notes.

9. **Evidence** ☞402—**Parol evidence is inadmissible to show agreement that absolute notes were payable only from sales of land.**

In an action on notes executed by a corporation for money loaned to it, parol evidence is inadmissible to show that the notes, which on their face were payable absolutely, were to be paid only from the proceeds of sales of the corporation's lands.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Sadie Greer Zumbrunn against the Grand Valley Water Users' Association. Judgment for plaintiff, and defendant brings error. Affirmed.

W. H. Gabbert, of Denver, Colo. (Guy V. Sternberg and S. G. McMullin, both of Grand Junction, Colo., on the brief), for plaintiff in error.

Frank McLaughlin, of Denver, Colo. (W. F. Zumbrunn, of Kansas City, Mo., and Frank Exline, of Denver, Colo., on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff below, Mrs. Zumbrunn, is the wife of Mr. W. F. Zumbrunn, who was her agent, and who, with

her consent, loaned her money on the promissory notes for $6,500 of the defendant below, the Grand Valley Water Users' Association, a corporation of the state of Colorado, organized to co-operate with the government of the United States in the construction, maintenance, and operation of the Grand Valley project, an irrigating canal under construction by the United States Reclamation Service. Mr. Zumbrunn conducted the negotiations which resulted in Mrs. Zumbrunn's loan, so that his knowledge was hers.

The association pleaded three defenses: (1) That the notes were given by it with Zumbrunn's knowledge, without any consideration moving to it, for the accommodation of Charles C. Ladd, for the purpose of lending the Association's name to Ladd to enable him to obtain credit; (2) that the notes were void, because one of the defendant's articles of incorporation provided that its "indebtedness, other than that incurred for construction or purchasing the canal, shall not exceed two-thirds of its capital stock," that its issued and outstanding capital stock, when it gave the notes, was 22,000 shares, of the par value of $1 each, and its indebtedness not incurred for construction or purchasing the canal was $15,000, and that Zumbrunn knew those facts; and (3) that Ladd had made a contract with the defendant to act as its colonization agent to sell lands to and locate settlers on the lands in its irrigation district, that Ladd wanted $6,500 to conduct at Kansas City, Mo., this business of selling these lands, that he went to Grand Junction, Colo., and with the aid of Zumbrunn persuaded the defendant to give the notes in suit to enable Ladd to get this $6,500, and to agree to retain the moneys it should receive from the sales of land by Ladd to pay the notes as they became due, that Zumbrunn agreed that the notes should be paid in that and in no other way, that Ladd entered upon the performance of his contract, and the defendant, with the consent of the plaintiff, paid him the commissions he earned thereunder.

The plaintiff, by her reply, denied all the averments of new matter in this answer. A jury was waived. The court tried the case, and made special findings of the facts: (1) That the notes were made by the defendant in consideration of the amounts thereof, which were received by it from the plaintiff for its own benefit, that it borrowed these amounts from the plaintiff to perform its contract with Ladd, and that, when those amounts were paid over to Ladd, that was done by its direction, to enable it to perform its contract with Ladd, and the defendant was not an accommodation maker or indorser of the notes; (2) that all the sums named in the notes as principals were paid by the plaintiff to the defendant and distributed on its orders, and that it was estopped from maintaining its plea that the execution of the notes was beyond the powers of the corporation; and (3) that the evidence entirely failed to establish that there was any agreement between the plaintiff and the defendant that the notes should be paid out of the moneys received from the sales of land by Ladd, and in no other way; and it rendered judgment against the defendant for $8,352.10, the amount of the notes and interest.

272 F.—60

The first defense set up in the answer was that the defendant did not receive any consideration for the notes, but made them with the knowledge of Zumbrunn for the accommodation of Ladd. In this court this is the argument in support of this defense: (a) The defendant had no power to do business outside of the state of Colorado, because section 847, Rev. Stat. Colorado 1908, provides that, "when any company shall be created under the laws of this state for the purpose of carrying on part of its business beyond the limits thereof, such certificate [the certificate for incorporation] shall state that fact"; the certificate for the incorporation of the defendant did not state any such fact; section 861 of the Revised Statutes of Colorado 1908, provided that it might be lawful for such a corporation, existing for the purpose, among others, of carrying on part of its business in another state to accept any law of such state, and to exercise any powers, privileges, and franchises conferred by such laws; the contract between the defendant and Ladd was beyond the powers of the defendant, because it contained agreements that the defendant would employ Ladd as its agent in Missouri, Kansas, Iowa, and Nebraska to procure purchasers of and settlers upon the lands in its irrigation district in Colorado, and that it would advance and lend to him $6,500, as well as agreements that Ladd would perform his duties as such agent in those states. (b) The defendant received no consideration for its notes, and was an accommodation maker, although the plaintiff by its direction furnished the $6,500, and at its request paid it over to Ladd, and the making of the notes was therefore beyond its powers, and they were therefore void.

[1] This argument has received thoughtful consideration, but for several reasons it has failed to convince that there was any error in the trial and decision of this issue of accommodation maker or not in the court below. In the first place there was no averment or plea in the answer that the defendant's contract with Ladd was beyond the powers of the corporation and void, nor does the record of the trial indicate that any such claim was presented or ruled by the trial court, while the defendant in its answer expressly alleged that the Ladd contract was made, and it is too late now to predicate error in the trial of this case upon the failure of the trial court to sustain the first defense because the Ladd contract was beyond the powers of the defendant and void when no such claim appears to have been made or ruled at the trial.

[2] In the second place, if the concession were made that the defendant had no corporate power to do business outside of Colorado, that the Ladd contract was void for that reason, that the defendant knew these facts and the facts that the defendant intended to use and was using the money the plaintiff loaned to it in consideration of its notes to enable the defendant to perform its part of that contract, nevertheless those facts would not, as against the defendant, avoid the notes or defeat her action upon them. Under the statutes of Colorado, and the defendant's articles of incorporation, it was granted the general power to borrow money, to incur and promise to pay indebtedness, and to perform any other necessary or appropriate acts, to acquire in

any manner whatsoever, to maintain and to operate any irrigation works. The defendant, therefore, had the general power to borrow the $6,500 of the plaintiff and to make its notes to repay it. The plaintiff had no right and it owed the defendant no duty to supervise, control, or direct the disposition by the defendant of the money she loaned to it, and for which the defendant gave her its written promises to pay. Therefore it is no defense to those notes that the plaintiff knew that the defendant intended to use and was using that money foolishly, or to its detriment, or to perform its part of a contract which may have been, but which neither party to the notes probably then suspected was, beyond the powers of the corporation, and which was not evil in itself. The result is that the claim that the defendant was an accommodation maker cannot be sustained on the ground that the contract between the corporation and Ladd was ultra vires.

[3] One who has received the benefits of the complete performance by the plaintiff of a contract, which was neither malum in se nor malum prohibitum, cannot successfully defend an action for the payment of his indebtedness which has accrued therefrom on the ground that either he or another intended to do some unlawful act, which was no part of the consideration nor of the performance of the agreement. Hanover Nat. Bank v. First Nat. Bank (8th C. C. A.) 109 Fed. 421, 427, 48 C. C. A. 482; Armstrong v. Toler, 11 Wheat. 258, 272, 278, 6 L. Ed. 468; McBlair v. Gibbes, 17 How. 232, 235, 236, 15 L. Ed. 132; Brooks v. Martin, 2 Wall. 70, 81, 17 L. Ed. 732; Ramsay v. Crevlin (8th C. C. A.) 254 Fed. 813, 820, 166 C. C. A. 259; In re Johnson (D. C.) 224 Fed. 180, 186.

[4] The court below rejected some evidence offered by the defendant to sustain its claim that it was an accommodation maker, but none that, if admitted, would, when taken together with the evidence received, have presented such substantial evidence to sustain that claim as would have warranted a finding of the court below in support of it, and there was no prejudicial error in the trial of the issue of accommodation maker or not.

[5] It is assigned as error that the court below held that the defendant was estopped from maintaining its defense to the notes that their execution and delivery were beyond its corporate powers, because they increased its indebtedness, other than that incurred for the construction or purchasing of the canal, beyond two-thirds of its capital stock. In support of this assignment counsel argue that no estoppel was pleaded by the plaintiff; but it is not necessary for a plaintiff to plead an estoppel which the defendant itself proves, and the estoppel in this case, if it exists, is based on the notes which the plaintiff pleaded and proved, and on other evidence which the defendant introduced.

[6] They next contend that, if the plaintiff can recover her money and interest, she cannot do so in this action upon the notes, but must bring an action for money had and received, and that even then she must suffer defeat, because she is in pari delicto. If the making of this loan and the execution of these notes had been beyond the scope of the power of the corporation, if they had been acts which the corporation

could not have done under any circumstances, or if they had been, as the Supreme Court said, "outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature," and hence not "voidable only, but wholly void, and of no legal effect" (Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 59, 11 Sup. Ct. 478, 488, 35 L. Ed. 55), or if there had been any moral turpitude, any delictum, in the transaction, this contention might have prevailed. But this loan was made and these notes were given by the corporation to obtain purchasers and occupants of lands in its district who would take and use the water of the canal which it was organized to promote, purchase, and operate, and become renters of these waters and owners of its stock to the respective amounts of one share for each acre of land so held by them. The transaction was made to accomplish the chief object for which the defendant's articles declared that it was organized. Under these articles and under the laws of Colorado it had the general corporate power to borrow money and to make its promissory notes therefor to accomplish this main object. So it was that the transaction was far within the scope of the general powers of the corporation, and it was had to accomplish the main object of its organization, and it did not fall under the ban of decisions which counsel cite, like Central Transportation Co. v. Pullman Palace Car Co., supra, where the transaction was one which the corporation could not under any circumstances make. This transaction was not an act beyond the scope of the powers granted to the corporation, but was the mere excessive exercise of one of the powers expressly conferred upon it, and there was no turpitude in it, there was neither malum in se nor malum prohibitum, and hence no delictum in the act in which the plaintiff participated.

[7] Moreover, the plaintiff loaned to the defendant for these notes and paid therefor to its order $6,500, which the defendant used as it desired, and from such use derived whatever benefit accrued from its chosen disposition of the money, and it now declines to repay it. If, in this state of the case, the indebtedness of the defendant was increased by its borrowing of this money above the limit prescribed by its articles and the statute of Colorado, there are two reasons why the plaintiff may not defeat this action on that ground. The first is that no statute of Colorado denounced the penalty of the invalidity of a contract which increased the indebtedness of a corporation beyond the limit prescribed for it by the statutes or its articles, and where the Legislature of a state under which a corporation is organized imposes no such penalty for exceeding the limit of its indebtedness, a court may not do so.

[8] The second is that, where a corporation acting within the scope of its general powers borrows, receives the benefits of, and promises to repay moneys which the lender pays over to it, or to its order, that promise is voidable, and not void; it is valid until avoided, not void until validated, notwithstanding the fact that it may increase its indebtedness above the limit therefor prescribed by statute or by its articles, and an action upon the promise is maintainable, even though the lender knew when he made the loan that it increased the corporation's

indebtedness above such limit. It is not denied that a court of equity might avoid such a promise at the suit of the corporation before it received the money for it, or after such receipt on condition that it first repaid the money. But, after such a contract is executed, after the promisor has received and used the money and retains it, its promise is actionable. Sioux City Terminal Railroad Co. v. Trust Co. of North America (8th C. C. A.) 82 Fed. 124, 134, 135, 27 C. C. A. 73; Id., 173 U. S. 99, 112, 19 Sup. Ct. 341, 43 L. Ed. 628; H. Scherer & Co. v. Everest (8th C. C. A.) 168 Fed. 822, 828, 829, 94 C. C. A. 346; Vought v. Eastern Bldg. & Loan Ass'n, 172 N. Y. 508, 517, 65 N. E. 496, 92 Am. St. Rep. 761; Eastern Bldg. & Loan Ass'n v. Williamson, 189 U. S. 122, 128, 129, 23 Sup. Ct. 527, 47 L. Ed. 735; Dunlop v. Mercer (8th C. C. A.) 156 Fed. 545, 555, 86 C. C. A. 435, and cases there cited; Central Trust Co. v. Columbus, H. V. & T. Ry. Co. (C. C.) 87 Fed. 815, 828; National Bank v. Matthews, 98 U. S. 621, 629, 25 L. Ed. 188; Fritts v. Palmer, 132 U. S. 282, 289, 10 Sup. Ct. 93, 33 L. Ed. 317; Logan County Bank v. Townsend, 139 U. S. 67, 76, 11 Sup. Ct. 496, 35 L. Ed. 107; Thompson v. Saint Nicholas Nat. Bank, 146 U. S. 240, 251, 13 Sup. Ct. 66, 36 L. Ed. 956; National Bank v. Whitney, 103 U. S. 99, 102, 26 L. Ed. 443. There was no error in the trial or adjudication of the issue presented by the second defense.

[9] The third defense was that there was an agreement between Zumbrunn and the defendant, made during the negotiations before the notes were signed and delivered, to the effect that they should be paid out of the moneys the defendant should receive from the sales of land by Ladd and in no other way. It is specified as error that in the trial of this defense the court refused to permit the defendant to introduce parol evidence to the effect that before the notes were made, and while the defendant and Zumbrunn were negotiating the loan, and after the contract between Ladd and the defendant had been made, the latter undertook to borrow $6,500 of banks, and could not do so on account of the limitation of its indebtedness, and that thereupon Zumbrunn told the defendant that he thought it had the corporate power to borrow the money, that he would loan the money to the defendant, and that anyhow he had known Ladd, and knew he always made good, and he would rely upon getting the notes paid from Ladd's commissions, and that thereupon the defendant executed the notes, and the plaintiff thereafter paid over the money borrowed as directed by the defendant to Ladd, to enable the defendant to furnish him with the $6,500 it had agreed to provide for him. But the notes are direct and unconditional promises of the defendant to pay the plaintiff the amounts therein stated, and they contained no contract or condition to the effect that they were payable only out of the moneys received from the sale by Ladd of the land, or in any other way than directly by the defendant. The evidence offered and rejected was therefore incompetent under the established and familiar rule that, in the absence of fraud or mutual mistake (and there is proof of neither here), no representation, promise, or agreement made, or opinion expressed in the previous parol negotiations as to the terms or legal effect of the re-

sulting written contract, can be permitted to prevail either at law or in equity over the plain provisions and proper interpretation of the contract, "and when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." Seitz v. Brewer's Refrigerating Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; New York Life Ins. Co. v. McMaster (8th C. C. A.) 87 Fed. 63, 71, 30 C. C. A. 532; Sioux Falls Bank v. Klaveness (8th C. C. A.) 264 Fed. 40, 42, 43.

Laying aside this incompetent testimony, there was no substantial evidence at the trial in support of the third defense. The judgment below must be affirmed; and it is so ordered.